■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GLEN RACE, Appellant. [910 NYS2d 271]—

Egan Jr., J. Appeal from a judgment of the County Court of Clinton County (Ryan, J.), rendered January 15, 2009, convicting defendant following a nonjury trial of the crimes of murder in the first degree, burglary in the first degree and grand larceny in the fourth degree (three counts).

During the early morning hours of May 11, 2007, the body of Darcy Manor was found lying on a dirt road on the grounds of the Churubusco Lodge, a hunting camp in Clinton County where Manor worked as a part-time caretaker. He had been shot one time in the back. The victim's Ford pickup truck was missing,

and a .44 caliber Ruger rifle was missing from the camp. Four days later and more than 2,000 miles away, a United States Border Patrol agent, responding to a sensor alert near Los Indios, Texas, encountered defendant walking down a road near the United States border with Mexico at the Rio Grande River. When asked to produce a passport, defendant opened his duffel bag revealing a rifle. A scuffle then ensued, during which defendant attempted to grab the officer's sidearm and bit him. Defendant was eventually subdued and taken into custody. A subsequent computer check of the rifle by the Border Patrol revealed that it had been reported stolen from the murder scene in New York.

In August 2007, defendant was indicted and charged with murder in the first degree, murder in the second degree, robbery in the first degree, three counts of grand larceny in the fourth degree and burglary in the third degree. In a subsequent indictment dated February 2008, defendant was indicted and charged with four counts of murder in the first degree, two counts of burglary in the first degree, two counts of grand larceny in the fourth degree, two counts of burglary in the second degree and criminal use of a firearm in the first and second degrees. After the two indictments were consolidated, one count was dismissed and, during the bench trial, six other counts were dismissed. Ultimately, County Court found defendant guilty of burglary in the first degree, murder in the first degree and three counts of grand larceny in the fourth degree.* He was thereafter sentenced to, among other things, life in prison without parole. Defendant now appeals.

Initially, we are not persuaded that County Court erred in denying defendant's request to proceed pro se, made both on the second day of trial and after the People completed their direct case. Once a trial has commenced, a defendant's right to invoke the right to represent himself or herself is "severely constricted and will be granted in the trial court's discretion and only in compelling circumstances" (*People v McIntyre*, 36 NY2d 10, 17 [1974]). In this case, defendant's application to proceed pro se was untimely, having been made after the trial commenced (*see People v Morales*, 12 AD3d 1126, 1126 [2004], *lv denied* 4 NY3d 746 [2004]; *People v Jordan*, 209 AD2d 544 [1994], *lv denied* 85 NY2d 973 [1995]). In addition, his complaints regarding defense counsel's performance, including his disagreement with the scope of counsel's cross-examination

---

* In rendering its determination, County Court noted that in finding defendant guilty of both murder in the first degree and burglary in the first degree, the lesser included offenses charged need not be considered.

and his contention that the withdrawal of a psychiatric defense was improper—even though there was no expert testimony to be introduced—do not establish compelling circumstances necessary to invoke his right to proceed pro se (*see People v Jones*, 277 AD2d 1 [2000], *lv denied* 96 NY2d 760 [2001]).

We note that, based on defendant's failure to renew his motion to dismiss for lack of legal sufficiency after the close of his proof, defendant's contention regarding the legal sufficiency of the evidence is unpreserved for appellate review (*see People v Kolupa*, 13 NY3d 786, 787 [2009]; *People v Garrow*, 75 AD3d 849, 850 [2010]). However, since defendant also argues that the verdict was against the weight of the evidence, which does not require preservation (*see People v Hebert*, 68 AD3d 1530, 1531 [2009], *lv denied* 14 NY3d 841 [2010]), "we will consider the evidence adduced as to each of the elements of the challenged crimes in the context of that review" (*People v Vargas*, 72 AD3d 1114, 1116 [2010], *lv denied* 15 NY3d 758 [2010]).

With respect to the charge of murder in the first degree, the People were obligated to prove that defendant intentionally killed another while in the course of committing burglary in the first degree (*see* Penal Law § 125.27 [1] [a] [vii]). With respect to the charge of burglary in the first degree, the People were obligated to prove that defendant knowingly entered or unlawfully remained "in a dwelling with intent to commit a crime therein, and when, in effecting entry or while in the dwelling or in immediate flight therefrom," he was armed with an explosive or deadly weapon (Penal Law § 140.30 [1]). Finally, with respect to the three counts of grand larceny in the fourth degree, the People were obligated to prove that defendant stole a credit card or debit card (*see* Penal Law § 155.30 [4]), a firearm, rifle or shotgun (*see* Penal Law § 155.30 [7]), and a motor vehicle valued at more than $100 (*see* Penal Law § 155.30 [8]). Because a different verdict on each of the five charges in this case would not have been unreasonable, we must "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Bleakley*, 69 NY2d 490, 495 [1987] [internal quotation marks and citations omitted]; *see People v Sanchez*, 75 AD3d 911, 913 [2010]; *People v Greenwood*, 24 AD3d 818, 818 [2005], *lv denied* 6 NY3d 813 [2006]). Although the appellate court must review the evidence in a neutral light (*see People v Rolle*, 72 AD3d 1393, 1396 [2010]), "[g]reat deference is accorded to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (*People v Bleakley*, 69 NY2d at 495). And, as relevant here, "the appropriate standard for

evaluating a weight of the evidence argument on appeal is the same regardless of whether the finder of fact was a judge or a jury" (*People v Lane*, 7 NY3d 888, 890 [2006]).

The trial testimony established that the victim spoke with his wife by telephone at approximately 4:00 P.M. on May 10, 2007, and he told her that, on his way home from his regular job, he was going to stop by the hunting camp to work on the water pump. At approximately 4:30 P.M., two area residents observed defendant on a road, one quarter of a mile from the camp, walking in its direction. At approximately 6:15 P.M., a third resident observed the victim's pickup truck driving away from the camp at a speed faster than normal. When the victim had not arrived home by 6:30 P.M. as expected, his wife and their two children drove to the camp's gate but found it locked, with no sign of the victim or his truck. At approximately 8:00 P.M., when the victim still had not returned home, his wife called several friends who initiated a search of the camp's grounds. Shortly after midnight, the victim's body was discovered lying on an interior dirt road approximately 1,000 feet from the camp. The body had a single gunshot wound to the back and was tied with rope and plastic tubing as if it had been dragged. During an autopsy of the victim's body, which revealed the cause of death to be a gunshot to the thorax, a bullet fragment was recovered and turned over to the State Police. A search by the State Police the next morning found one of the camp's kitchen windows broken from the inside out, and bloodstains and tools on the ground next to the water pump, which was approximately 30 to 40 feet from the broken window. A later trajectory comparison between the broken window and the blood-stained ground was consistent with a gun having been fired by a shooter from inside the camp through that window to the location of the camp's water pump. When the camp owner came to the scene after the murder, he reported to the police that his Ruger .44 caliber rifle, along with ammunition, was missing.

The victim's Ford pickup truck was found abandoned with a flat tire approximately three miles from Baytown, Texas on May 15, 2007. While bearing a stolen Texas license plate on its rear bumper, plates from three other states were found in and under the truck's rear tool box—one from Louisiana, one from South Dakota, and the original New York license plates issued to the victim. Also found inside the truck was, among other things, defendant's latent fingerprints and clothing and plastic juice bottles that contained defendant's DNA. A surveillance videotape from a convenience store depicted defendant and the victim's truck at Sabine Pass, Texas on May 13, 2007. A truck

stop clerk identified defendant as being the person who, on May 14, 2007, purchased a bus ticket from Baytown, Texas for travel south to Brownsville, Texas. On May 15, 2007, defendant was seen in Harlingen, Texas where he took a taxi south to Los Indios, Texas and changed some dollars to pesos. When the Border Patrol searched defendant after his arrest on May 15, 2007, he was discovered to be in possession of the rifle and a credit card in the name of the victim. The rifle seized from defendant was turned over to the State Police and returned to New York where it was test fired at the New York State Forensic Investigation Center. Microscopic comparison of the resulting test projectile with the bullet fragment retrieved from the victim's body revealed that both were fired from the same gun. At trial, the camp owner confirmed that the rifle seized from defendant was, in fact, the rifle owned by him, stored at the camp and missing after the murder. Finally, the People presented expert testimony that the value of the victim's truck was approximately $2,000.

In evaluating this evidence in a neutral light (*see People v Rolle*, 72 AD3d at 1396) and despite the testimony of one area resident that at approximately 6:15 P.M. on May 10, 2007 she observed two unidentified individuals in the victim's truck drive by her residence traveling away from the camp, and according appropriate deference to County Court's assessment of witness credibility (*see People v Bleakley*, 69 NY2d at 495), we find that the verdict on all counts is not against the weight of the evidence. In addition, according the factfinder the appropriate deference (*see People v Mateo*, 2 NY3d 383, 410 [2004]), we are unpersuaded that County Court, the trier of fact, failed to give the evidence the weight it should have been accorded.

Finally, we are unpersuaded that defendant was denied the effective assistance of counsel. The record reflects that counsel made appropriate motions and clear opening and closing statements, effectively cross-examined witnesses, made appropriate objections and successfully moved to have certain charges of the indictments dismissed, such that defendant was afforded meaningful representation (*see generally People v McDaniel*, 13 NY3d 751, 752 [2009]; *People v Benevento*, 91 NY2d 708, 713 [1998]; *People v Baldi*, 54 NY2d 137, 146-147 [1981]; *People v Blanchard*, 63 AD3d 1291, 1292 [2009], *lv denied* 13 NY3d 794 [2009]; *People v Long*, 307 AD2d 647, 648-649 [2003]).

Peters, J.P., Spain, Malone Jr. and Stein, JJ., concur. Ordered that the judgment is affirmed.