Spain, J.
Appeal from a judgment of the County Court of Franklin County (Main Jr., J.), rendered May 27, 2010, upon a verdict convicting defendant of the crime of grand larceny in the second degree.
Defendant was the business manager and bookkeeper for Adirondack Audiology Associates in the Village of Saranac Lake, Franklin County from 2004 until February 2008, when her employer became aware that she had charged thousands of dollars of personal expenditures to Adirondack’s corporate credit card, in addition to using business funds to purchase gasoline and cell phone service for her personal use. Defendant was immediately discharged from her employment and thereafter charged with grand larceny in the second degree and falsifying a business record in the first degree. After a jury trial, she was acquitted of falsifying a business record, but convicted of grand larceny in the second degree and sentenced to a prison term of 3 to 9 years and ordered to pay restitution in the amount of $150,000. On defendant’s appeal, we now affirm.
First, we do not agree with defendant that the verdict was against the weight of the evidence. Given defendant’s testimony that she intended to repay her employer for the personal expenses charged which, if credited, might negate the element of larcenous intent necessary to sustain her conviction (see Penal *983 Law § 155.05 [1]), we must “weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony” and determine whether the jury’s verdict was against the weight of the credible evidence (People v Romero, 7 NY3d 633, 643 [2006] [internal quotation marks and citations omitted]). Adirondack’s owner, audiologist Keith Walsh, testified that he hired defendant to manage the finances of his practice. He stated that he issued corporate credit cards to defendant, his three other audiologists and himself, instructing each that the cards were to be used for business purposes only. The other audiologists corroborated this testimony and stated that they never used their cards for personal expenses. Walsh acknowledged, however, that he and his wife occasionally used the corporate credit cards for personal expenses, but they paid these back and used the card to increase the “points” they accumulated on it, which they could redeem for cash rewards. Walsh also made several personal loans to defendant, one apparently still outstanding, to help her with the construction of her home and to assist in resolving her mother’s debts.
The People offered unrefuted testimony that, during the course of her employment, defendant charged over 400 personal expenses and cash advances to the corporate credit card, amounting to approximately $80,000, and also accrued $21,000 in personal gasoline expenses and nearly $6,000 in personal telephone expenses that she paid with Adirondack’s funds. Testimony was also offered that defendant had unilaterally increased her salary from $35,000 in 2004, to $43,000 in 2005, to $58,000 in 2006, and to $61,000 in 2007, and was on course to earn $74,000 in 2008. Walsh testified that he gave his employees a raise in August of about three percent and authorized Christmas bonuses, but that he did not recall defendant ever asking him for a larger raise.
In her defense, defendant did not specifically deny this spending, but testified that Walsh told her that the corporate credit card could be used for both business and personal expenses. She stated that she intended to repay what she owed, although she did not know how much money that was, and that because she intended to repay the money, it was not theft. Her former employer also testified that defendant had borrowed money from his business when she worked for him and had paid it back. Defendant also relied on the fact that she listed over $95,000 as debt owed by her in Adirondack’s books as accounts receivable as evidence that she never attempted to conceal her use of the business’s funds. The People offered testimony of an *984 accountant who had examined Adirondack’s books and agreed that these figures were stated as being owed to the company on its balance sheets. He explained, however, that people seeking to perpetrate a fraud on a business by personal use of a corporate credit card sometimes attribute these charges to accounts receivable in an effort to hide them as legitimate business expenses. Further, although defendant stated her intention of repaying the debt, she made no payments between the time of her termination and the trial and, a few days after the discovery of her expenditures, she was found shredding financial documents in her office. Given the substantial evidence that defendant engaged in the excessive use of Adirondack’s resources for her personal expenses without authorization, we find that the verdict is not against the weight of credible evidence (see People v Bonneau, 94 AD3d 1158, 1159 [2012], lv denied 20 NY3d 985 [2012]; People v DeDeo, 59 AD3d 846, 850-851 [2009], lv denied 12 NY3d 782 [2009]; People v Waugh, 52 AD3d 853, 854-855 [2008], lv denied 11 NY3d 796 [2008]).
Finally, defendant—who was released on parole in September 2012—argues that her sentence was harsh and excessive. We find no extraordinary circumstances or abuse of discretion that would form a basis to disturb defendant’s sentence, which falls well within the statutory guidelines (see Penal Law §§ 70.00 [2] [c]; [3] [b]; 155.40 [2]). At sentencing, County Court considered the letters written in defendant’s support, describing her as a hard-working, devoted mother of two small children, and her lack of a prior criminal history. It then balanced those factors against the magnitude of the deceit involved in stealing—over a course of several years—such a large amount of money from a small héalthcare practice whose owners trusted and helped her. Accordingly, we find no cause to warrant a reduction in her sentence (see People v Helstein, 95 AD3d 1564, 1564 [2012], lv denied 19 NY3d 997 [2012]; People v Arbas, 85 AD3d 1320, 1323 [2011], lv denied 17 NY3d 813 [2011]; People v Solock, 50 AD3d 1166, 1166-1167 [2008]; compare People v Forkey, 72 AD3d 1209, 1211 [2010]).
Mercure, J.P., Stein and McCarthy, JJ., concur. Ordered that the judgment is affirmed.