■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHAD OLSON, Appellant. [974 NYS2d 608]—

Spain, J.

In early 2011, two young girls (hereinafter victim A and victim B) who did not know one another separately disclosed to their mothers that defendant had subjected them to sexual contact when he lived with their respective families while in relationships with their mothers. Defendant was indicted and, at his jury trial, victim A testified that during the period of time in which defendant lived with her family, at various locations in Ulster County between January 2005 and August 2008 when she was between the ages of 9 and 12, defendant touched or rubbed her vaginal area over clothing 15 to 20 times for periods ranging from seconds to minutes. Victim B testified that between November 2008 and January 2009, when she was 10 years old, defendant touched her breasts and upper thigh and near her vaginal area. The victims testified that the abuse ended when defendant moved out and their mothers discontinued contact with him, and that they delayed disclosing the abuse because they were fearful of him for themselves and their moth-

ers. Victim B disclosed the abuse to her mother in January 2011, and then to the police. This came after defendant had initiated contact with her mother concerning a post breakup child born to the mother, who believed defendant to be the father. When victim B's mother thereafter made contact with victim A's mother through a relative, victim A was questioned and disclosed the abuse. Defendant testified, admitting he lived with the victims' families but denying all of the allegations of sexual contact. Defendant was convicted of course of sexual conduct against a child in the second degree as to victim A, sexual abuse in the first degree as to victim B, and two counts of endangering the welfare of a child, one count with respect to each victim. Sentenced to an aggregate prison term of 14 years, defendant now appeals. Finding no merit to his contentions, we affirm.

Defendant initially contends that the verdict is contrary to the weight of credible evidence, arguing that the victims' accounts were not believable, were undermined by their delayed disclosure even after defendant discontinued contact with their mothers, and lacked physical corroborative evidence. While a different verdict would not have been unreasonable given that the verdict turned on credibility assessments between each victim and defendant, upon our independent review and weighing of the conflicting testimony in a neutral light and deferring to the jury's determination to credit the victims' accounts, we cannot agree that the jury failed to give the evidence its deserving weight; "the jury was justified in finding defendant guilty beyond a reasonable doubt" on all counts and their verdict was not against the weight of the credible evidence (*People v Danielson*, 9 NY3d 342, 348 [2007]; *see People v Bleakley*, 69 NY2d 490, 495 [1987]). Victim A, age 15 at trial, testified to specific instances—including locations (the garage and living room), the surrounding circumstances and regarding the first incident when she was alone watching television in the living room—in which defendant made sexual contact with her vagina through clothing when she was under the age of 13. She explained to the jury her reasons for delaying disclosure, even after her family moved out of state, until her mother directly asked her after speaking with victim B's mother and telling her of victim B's allegations, including her reasons for fearing defendant; her mother's testimony established that raising the question even after the passage of time made her very upset. The fact that her disclosure of the extent and details of the abuse, which remained consistent, came about gradually over time through questioning did not undermine the believability of her account, particularly given her testimony that she was very shaken by the police questioning and continued to fear defendant.

Victim B, age 13 at trial, testified that defendant made sexual contact with his hands on her breasts and upper thighs in her bedroom or while her mother was napping; she relayed specific episodes at various locations in the house or defendant's van, such as when she was sick on the couch in the living room and on trips to specific stores in the van. She explained that she was scared of him because he had abused her and her mother, physically and verbally. The timing of her delayed disclosure is understandable, given defendant's reappearance—after a lengthy absence since the last abuse—in her mother's life following the birth of a child. Indeed, testimony of the male police investigator who interviewed victim B in February 2011 after that disclosure reflected that she was still very nervous and shaken by the abuse and had great difficulty discussing it or disclosing details until a female investigator was assigned. Her explanation that she did not initially disclose that defendant had touched her breasts or vagina because she was "ashamed of it" and "felt violated" was not, as defendant asserts, incredible. The expert testimony of a clinical psychologist offered by the People aided the jury's understanding of the reasons that children delay disclosure, particularly when sexual abuse occurs in family settings. The jury rationally rejected claims that the victims (or their mothers), who did not know one another at the time of the disclosures, had fabricated their accounts of abuse by defendant (*see People v Sorrell*, 108 AD3d 787, 789-790 [2013]; *People v Hayes*, 104 AD3d 1050, 1054 [2013]).

Next, we perceive no error or abuse of discretion in County Court's balanced *Sandoval* compromise (*see People v Hayes*, 97 NY2d 203, 208 [2002]; *People v Grady*, 40 AD3d 1368, 1370-1371 [2007], *lv denied* 9 NY3d 923 [2007]). The court permitted inquiry regarding defendant's criminal contempt conviction, upon his guilty plea, for violating an order of protection following an arrest for assault in 2008, which satisfied that assault charge; the court precluded questions about the underlying facts or identity of the victim of those crimes,* as well as about his prior convictions for aggravated harassment, petit larceny and unlawful possession of marihuana. Defendant's intentional violation of prior court orders bore on his honesty, truthfulness and willingness to advance his own interests at the expense of society, all bearing on his testimonial credibility (*see People v*

---

* Indeed, it was only defendant's direct testimony that suggested that the identity of the victim of that assault—and the one in whose favor the order of protection was issued—was victim A's mother. Defendant's claims regarding the relevance of the order of protection were not preserved by objection at trial (*see* CPL 470.05 [2]).

*Hayes*, 97 NY2d at 207; *People v Quiller*, 298 AD2d 712, 713 [2002], *lv denied* 99 NY2d 618 [2003]; *People v Williams*, 256 AD2d 661, 662 [1998], *lv denied* 93 NY2d 981 [1999]; *People v Quesnel*, 238 AD2d 725, 726-727 [1997], *lv denied* 90 NY2d 896 [1997]). Defendant is correct that impeachment questioning about a prior arrest, which is merely an accusation and not evidence of guilt, is not proper (*see People v Morrison*, 194 NY 175, 178 [1909]; *People v McKinley*, 39 AD2d 749, 749 [1972]; *People v Harvey*, 34 AD2d 857, 858 [1970]). However, the focus of the *Sandoval* ruling was to allow impeachment of defendant on the fact that he had admitted—by his guilty plea to criminal contempt—to violating a lawful court order of protection that followed his arrest for an underlying assault, and did not focus on his arrest itself as impeachment evidence. The prosecutor, in cross-examining defendant, asked only once about the arrest as the genesis of the order of protection, and did not imply that defendant had committed—or should be disbelieved because of— the assault. It was also made clear for the jury that defendant had never been convicted of that assault charge, which was satisfied by the criminal contempt plea. In our view, any error was harmless (*see People v Grant*, 7 NY3d 421, 424 [2006]; *People v Boodrow*, 42 AD3d 582, 585 [2007]).

We also find that County Court did not err or abuse its discretion in declining to order a *Frye* hearing (*see Frye v United States*, 293 F 1013 [1923]) with respect to the expert testimony proffered by the People. Testimony regarding child abuse accommodation syndrome (hereinafter CAAS) has long been held to be admissible to aid the jury's understanding of, among other things, why children might delay reporting sexual abuse, when offered by a qualified expert who has not met the child in issue and does not offer an opinion regarding credibility or whether abuse has occurred; such testimony is not novel and, thus, the court did not err in declining to hold a *Frye* hearing (*see People v Spicola*, 16 NY3d 441, 465, 467 [2011], *cert denied* 565 US —, 132 S Ct 400 [2011]; *People v Wesley*, 83 NY2d 417, 422 [1994]; *People v Bassett*, 55 AD3d 1434, 1436-1437 [2008], *lv denied* 11 NY3d 922 [2009]). The victims' protracted delay in disclosing the abuse was a significant issue at trial; indeed, a main defense premise was that the delay indicated that the allegations were not true and, thus, the expert testimony was properly received (*see People v Maggio*, 70 AD3d 1258, 1260-1261 [2010], *lv denied* 14 NY3d 889 [2010]).

With regard to defendant's claim that he was improperly denied an additional indefinite adjournment to retain another expert on CAAS, defendant had well over a week's notice of the

People's intent to offer a CAAS expert and additional time prior to the start of trial to obtain an expert, he was granted a requested short adjournment and the testimony of the People's expert at a prior unrelated trial was turned over to the defense. In addition, counsel did not, at any point, indicate to County Court that he had retained an expert who would be unavailable for the upcoming scheduled trial, but would be available at a further date, so as to warrant an adjournment for that purpose. In fact, the defense had obtained an expert as of the pretrial hearings, who testified at this trial. Under these circumstances, we discern no abuse of discretion in the denial of an additional adjournment (*see People v Gragnano*, 63 AD3d 1437, 1443-1444 [2009], *lv denied* 13 NY3d 939 [2010]; *cf. People v Spears*, 64 NY2d 698, 699-700 [1984]).

Finally, we cannot conclude that County Court's imposition of consecutive maximum sentences was harsh and excessive so as to warrant a reduction in the interest of justice (*see* CPL 470.15 [6] [b]). The court properly considered all relevant factors, including defendant's lack of remorse, lengthy criminal history, and the manipulative and egregious abuse of trust underlying these crimes. While the sentence imposed was significantly longer than that offered prior to trial, that offer had been extended based on the wishes of these young victims to be spared the ordeal of testifying and implicitly reflected the People's uncertainty, prior to trial, that the victims would be willing or psychologically able to testify in open court; this disparity alone does not establish that defendant was punished for going to trial, and he gave up any right he had to that offered disposition by proceeding to trial (*see People v Van Pelt*, 76 NY2d 156, 160 [1990]; *People v Pena*, 50 NY2d 400, 412-413 [1980], *cert denied* 449 US 1087 [1981]; *People v Lakatosz*, 59 AD3d 813, 816 [2009], *lv denied* 12 NY3d 917 [2009]). Moreover, the record, including the girls' subsequent trial testimony and heartbreaking victim impact statements offered at sentencing, reflects the deep, devastating and lasting impact from defendant's abuse of them while acting as a father figure, to an extent not fully known at the time of the plea offer, justifying the imposition of a much greater sentence. This included the severity of the long-term psychological and emotional harm and trauma suffered by these victims, which caused both girls to subsequently engage in serious physical self-harm—with one of the victims repeatedly being hospitalized for suicide attempts—and, years later, both suffered from self loathing and blame, lasting fear of retribution, and serious self-esteem damage. Thus, under the particular facts of this case, where the record contains no support for defendant's claim that the lengthier sentence imposed after

trial was a result of vindictiveness or retaliation for exercising his right to trial, we cannot conclude that County Court "placed undue weight upon defendant's ill-advised decision to reject the very favorable plea bargain and proceed to trial" (*People v Morton*, 288 AD2d 557, 559 [2001], *lv denied* 97 NY2d 758 [2002], *cert denied* 537 US 860 [2002]).

Peters, P.J., Stein and McCarthy, JJ., concur. Ordered that the judgments are affirmed.