*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:    July 10, 2014                    104537
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

        v                                      MEMORANDUM AND ORDER

KATHRYN A. SHOEMAKER,
                        Appellant.
_____

Calendar Date:    May 29, 2014

Before:   Peters, P.J., Rose, Egan Jr., Lynch and Devine, JJ.

_____

        Cynthia Feathers, Glens Falls, for appellant.

        Andrew J. Wylie, District Attorney, Plattsburgh (Nicholas
J. Evanovich of counsel), for respondent.

_____

Rose, J.

        Appeal from a judgment of the County Court of Clinton
County (Ryan, J.), rendered June 29, 2011, upon a verdict
convicting defendant of the crimes of murder in the first degree
and grand larceny in the third degree (six counts).

        Defendant was involved in a business and sexual
relationship with the victim, a 52-year-old excavation contractor
who was 19 years her senior.  The victim had funded defendant's
fledgling trucking business by buying her a tractor-trailer, and
he had previously assisted her with money to purchase a karaoke
machine, pickup truck and motorcycle.  A State Police
investigation revealed that, starting in late June 2009,
defendant cashed a series of six forged checks drawn on the
victim's business account totaling over $35,000 and spent most of

the money on items unrelated to her trucking business. The last check, for $5,100, resulted in the victim's account being overdrawn by approximately $1,900. The bank covered the overdraft and notified the victim on August 18, 2009. That same day, the victim telephoned defendant to confront her about the checks. Kurtis Conto, a young man who lived in defendant's home at the time, overheard her conversation with the victim on a speakerphone. According to Conto, the victim "got mad and told [defendant] . . . he was going to go to the police if she didn't come over for the checks she had wrote." Defendant then told Conto that the victim was going too far regarding the checks and she needed to "get rid of him." According to Conto, defendant also asked him if he would help her dispose of the body if she were to kill the victim.

The next evening, the victim delivered to defendant a camper that he had agreed to let her borrow for a trip and told her to register it in her name the following day. Unbeknownst to the victim, defendant had already registered the camper in her name with forged documents. Later that night, defendant went to the victim's residence, staying until approximately 11:00 p.m. When she returned home, she woke Conto and told him to burn the garbage that she had collected in the kitchen. While doing so, Conto noticed a rope and plastic bag among the burning items; defendant told Conto that she had used them to strangle the victim and that she had then cut his wrist to make it look like a suicide. Defendant also asked Conto to get rid of a handgun that she said she had taken with her, but it had jammed.

The following morning, the victim was found dead on his bed with quarter-inch wide linear abrasion marks on both sides of his neck and a postmortem cut on his wrist. The police later recovered the handgun and, following the completion of their investigation, charged defendant with murder in the first degree, murder in the second degree and six counts of grand larceny in connection with the checks cashed from the victim's business account. Ultimately, defendant was convicted of murder in the first degree and each of the grand larceny charges. County Court then sentenced her to life in prison without parole on the murder conviction and six consecutive terms of 2⅓ to 7 years in prison on the larceny convictions, to be served concurrently with the

life sentence.  She now appeals, arguing that the convictions are not supported by the weight of the evidence and that the sentences are harsh and excessive.

Where, as here, a different verdict would not have been unreasonable, we will weigh the probative force of conflicting testimony and the strength of conflicting inferences in determining whether the verdict is against the weight of the evidence (see People v Romero, 7 NY3d 633, 643 [2006]; People v Bleakley, 69 NY2d 490, 495 [1987]).  Further, we accord deference to the jury's resolution of the credibility issues involved, given its opportunity to view the witnesses and observe their demeanor throughout this process (see People v Bleakley, 69 NY2d at 495; People v Portee, 56 AD3d 947, 949 [2008], lv denied 12 NY3d 820 [2009]; People v Bolarinwa, 258 AD2d 827, 831 [1999], lv denied 93 NY2d 1014 [1999]).

Defendant's primary contention that Conto lacks credibility is based on his denial that he had ever been arrested despite the existence of a mug shot and booking sheet prepared by the State Police for an incident that occurred in 2008.  The State Police, however, confirmed Conto's explanation that he had merely been detained and never arrested or charged with anything in connection with the incident.  Defendant also claims that Conto lied when he denied being provided a benefit for his testimony because there was evidence that a State Police captain had written a letter requesting that the Department of Motor Vehicles reinstate Conto's license.  As explained by the author of the letter, however, Conto's license plates had been confiscated as part of a search warrant executed at defendant's residence.  As a result, when Conto was unable to turn in the plates, his driver's license was suspended.  The letter was drafted in order to rectify the situation and allow Conto's license to be reinstated.  These collateral issues were fully explored at trial and, inasmuch as Conto's testimony regarding defendant's statements to him was consistent, corroborated by other evidence and not inherently incredible, we find no basis to disturb the jury's credibility determination (see People v Jones, 101 AD3d 1241, 1242 [2012], lv denied 21 NY3d 944 [2013]; People v Chatham, 55 AD3d 1045, 1046 [2008], lv denied 14 NY3d 839 [2010]; People v Lane, 47 AD3d 1125, 1126 [2008], lv denied 10 NY3d 866 [2008]).

          With respect to the larceny convictions, a handwriting expert testified unequivocally that all six checks were forgeries. The expert also opined that they were consistent with having been written by defendant. Further, a voided check from the victim's business account and a sheet of paper with the victim's name written out multiple times were found at defendant's residence, suggesting that someone there had been practicing signing the victim's name. The evidence also conclusively established that defendant had personally cashed each of the six forged checks at the bank. While defendant argues that the six forged checks were consistent with the victim's history of providing her with funds for her businesses, an examination of defendant's business and personal accounts revealed that she had not spent the money on her trucking business, but had instead purchased, among other things, a car, car trailer and camp property. The evidence also indicated that, contrary to defendant's contention, the victim was unaware that the checks had been written. He kept complete records of his business account, including a record of various transactions in May 2009 and three checks he had written to defendant in June 2009 to cover expenses related to her trucking business, but there were no entries in his records for any of the six forged checks in question. When initially informed by the bank of the overdraft caused by the sixth check, the victim indicated that he was unaware of the check. Considering this evidence in a neutral light, defendant's larcenous intent is readily inferable and the verdicts convicting her of grand larceny in the third degree are not against the weight of the evidence (see People v Brown, 107 AD3d 1145, 1147 [2013], lv denied 22 NY3d 1039 [2013]; People v Farnsworth, 103 AD3d 982, 983-984 [2013]; People v Race, 78 AD3d 1217, 1221 [2010], lv denied 16 NY3d 835 [2011]).

          The evidence also supports the jury's determination that defendant is guilty of murder in the first degree. According deference to the jury's apparent acceptance of Conto's testimony, defendant expressed her intent to "get rid of" the victim after he confronted her about the money that she had stolen from his account and threatened to tell the police. She went to the victim's house with a loaded handgun and she was the last known person to see him alive. Further, when she returned home, she admitted to Conto that she had killed the victim in a manner

consistent with how he was found.  Although defendant initially denied to the police that she had been to the victim's residence on the night in question, she later admitted as much.  While we acknowledge that defendant was three inches shorter than the victim, the evidence also established that she outweighed him by 30 pounds and was 19 years younger.  Further, there was testimony that she was strong enough to lift a 180-pound male in a bear hug and carry him out of a bar.

We are also aware that the defense expert testified that death by cardiac inhibition could not be ruled out, but we note as well that he agreed with the essential finding of the People's medical expert that the victim died as a result of being strangled with a ligature by another person.  Both experts further agreed that the lack of any defensive wounds could be explained by, among other things, the victim being strangled from behind.  Although defendant speculates that, given the lack of any defensive wounds, the strangulation could have been a consensual part of sexual activity with some other person after she left his house that night, both experts agreed that the existence of multiple ligature marks on the victim's neck was consistent with some form of struggling.  The postmortem cut on the victim's wrist also indicates an attempt to cover up the cause of death, consistent with defendant's statement to Conto.  Considering all of the evidence in a neutral light, we find no basis to conclude that the verdict convicting defendant of murder in the first degree is against the weight of the evidence (see People v Dashnaw, 116 AD3d 1222, 1226-1227 [2014]; People v Johnson, 106 AD3d 1272, 1278-1279 [2013], lv denied 21 NY3d 1043 [2013]; People v Race, 78 AD3d at 1221).

Finally, although defendant argues that the sentence imposed is harsh and excessive, she was convicted of identity theft in Louisiana in 2004 and, in determining the appropriate sentence, County Court took into account the overwhelming evidence that defendant coldly planned and carried out this murder and has shown no remorse.  Contrary to defendant's claim, we find nothing in the record to indicate that County Court was improperly vindictive or sought to punish her for exercising her right to trial (see People v Mercado, 113 AD3d 930, 934 [2014]; People v Olson, 110 AD3d 1373, 1377 [2013]).  Absent any apparent

abuse of discretion or extraordinary circumstance, we decline to disturb the sentence (see People v Mattis, 108 AD3d 872, 876 [2013], lvs denied 22 NY3d 957 [2013]; People v Callicut, 101 AD3d 1256, 1265 [2012], lvs denied 20 NY3d 1096, 1097 [2013]; People v Hansen, 290 AD2d 47, 57 [2002], affd 99 NY2d 339 [2003]).

Peters, P.J., Egan Jr., Lynch and Devine, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court