■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v REGINALD SWINTON, Appellant. [928 NYS2d 693]—

---

On July 15, 2005, by a 16-count indictment, defendant was charged with multiple counts of forcible rape, forcible criminal sexual act, burglary, robbery, and attempted robbery. Specifically, it was alleged that on three separate dates, over the course of two weeks, on the upper west and east sides of Manhattan and at approximately the same times, defendant broke into three separate premises, took money, and either sexually assaulted or raped the women whom he found inside.

At trial, with regard to the first incident, it was established that the assailant entered the victim's premises on East 89th Street through a window after she had gone to sleep, put a cushion over her face, asked for and took money from her purse, asked the victim to blindfold herself with her own shirt, threatened to kill her if she disobeyed, told her to "relax, relax" immediately prior to forcing her to have intercourse with him and then forced her to perform oral sex on him. With respect to the second incident, the evidence at trial established that the assailant entered the victim's premises on West 87th Street through a window after she had gone to sleep, put a pillow over her face, threatened to kill her if she disobeyed, asked the victim to blindfold herself with her husband's scarf, asked for and took money from her wallet, told her to "relax" before he forced her to have intercourse with him, and then forced her to perform oral sex. With regard to the third incident, the evidence at trial established that the assailant entered the victim's premises on East 89th Street through a window, again after she had gone to sleep, put a pillow over the victim's face, asked for and looked for money, threatened to kill her, asked the victim to blindfold herself with her own t-shirt, forced her to perform oral sex and, telling her to "relax" several times, tried to force her to have intercourse. None of the victims could identify defendant. A palm print found at the premises where the first incident occurred matched defendant's palm print. Semen discovered at the premises where the second incident occurred yielded DNA matching defendant's DNA. However, no physical evidence linked defendant to the crimes committed within the third premises.

Because the assailant's identity with respect to the third incident could not be independently established and because the

assailant's conduct during all three incidents was so similar and distinctive, the trial court properly allowed the jury to consider the issue of defendant's identity as the perpetrator of the third incident through the use of the assailant's modus operandi (*People v Beam*, 57 NY2d 241, 250-251 [1982]; *People v Allweiss*, 48 NY2d 40, 47 [1979]). Moreover, the trial court properly instructed the jury that it could not link defendant to the third crime merely because it concluded that he had a propensity for criminal activity, but could only do so if it found that defendant had committed either of the first two incidents and that the assailant who committed the third employed the same unique distinctive conduct (*see Beam* at 250-253).

Defendant's contention that the crimes alleged and in particular the assailant's behavior during the crimes were neither similar nor unique enough to establish a pattern is meritless. On the contrary, all three incidents occurred within 15 days of each other and involved an assailant who broke into a premises through a window at night, covered his victim's face with a pillow or cushion, demanded that the victim blindfold herself with an article of her own clothing or clothing found within the victim's premises, repeatedly told each victim to "relax," demanded money, threatened to kill the victim, forced the victim to perform oral sex, and either forced or tried to force the victim to engage in sexual intercourse. Thus, the assailant's behavior gave rise to a distinct pattern making it "highly probative of . . . [his] identity" (*Beam* at 253; *People v Phillips*, 70 AD3d 562, 562 [2010], *lv denied* 16 NY2d 799 [2011] ["(t)he first three robberies, occurring within a short time period and in the public areas of apartment buildings located within close geographic proximity, had many similarities that formed a 'distinctive repetitive pattern' "]; *People v Bryant*, 258 AD2d 293 [1999], *lv denied* 93 NY2d 1043 [1999]; *People v West* 160 AD2d 301, 301-302 [1990], *lv denied* 76 NY2d 798 [1990] [distinctive modus operandi established when "attacks occurred within a two-month period against four unaccompanied women in the late afternoon in common areas of office buildings which were all located within a two-block-wide corridor between 30th and 45th Streets"]). While we acknowledge that the crimes here were not identical and that slight differences in their commission existed, "[i]t is not necessary that the pattern be ritualistic for it to be considered unique; it is sufficient that it be a pattern which is distinctive" (*Beam* at 253).

Defendant's challenge to the sufficiency and weight of the evidence with respect to his conviction for the third incident is without merit. A review of the record evinces that the jury's

conclusion of guilt is rationally supported by the evidence adduced at trial (*People v Danielson*, 9 NY3d 342, 349 [2007]; *People v Bleakley*, 69 NY2d 490, 495 [1987]). Specifically, the verdict is supported by the testimony of the victim describing the third attack and the identification of the defendant as the perpetrator based on his unique modus operandi. For this very reason, it cannot be said that the verdict is against the weight of the evidence since an acquittal on this record would have been unreasonable (*id.*).

Since the trial court permitted only limited inquiry into defendant's extensive criminal record, it minimized any potential prejudice and thus its *Sandoval* ruling balanced the appropriate factors and was a proper exercise of discretion (*People v Hayes*, 97 NY2d 203 [2002]; *People v Walker*, 83 NY2d 455, 458-459 [1994]; *People v Pavao*, 59 NY2d 282, 292 [1983]).

We perceive no basis for reducing the sentence. In particular, defendant's contention that insofar as his sentence, in the aggregate, is illegal, should be vacated, and must be capped at 50 years pursuant to Penal Law § 70.30 (1) (e) (vi), is meritless. Preliminarily, we note that the Penal Law (§ 70.30 *et seq.*) does "not restrict the number or length of the individual consecutive sentences that may be imposed, nor does it require that the aggregate sentence be vacated whenever the aggregate maximum [sentence] exceeds the limitation" (*People v Moore* 61 NY2d 575, 578 [1984]). Instead, the statute "merely requires that the Department of Correctional Services calculate the aggregate maximum length of imprisonment consistent with the applicable limitation" (*id.*; *People v Belle*, 277 AD2d 143, 143 [2000], *lv denied* 96 NY2d 780 [2001]). Moreover, where as here, defendant was sentenced as a persistent violent felony offender, the cap imposed by Penal Law § 70.30 (1) (e) (vi) does not apply and does not, in any event, warrant reduction of his sentence (*Matter of Roballo v Smith*, 63 NY2d 485, 489 [1984] ["(t)he purposes of both sections (Penal Law § 70.10, enhancing a defendant's sentence because he's a persistent felony offender and Penal Law § 70.30 *et seq.*) will be served if section 70.30 . . . is read as excluding those situations when the defendant receives consecutive sentences, at least one of which is as a persistent felony offender"]).

We have considered and rejected defendant's pro se speedy trial claim. Concur—Andrias, J.P., Catterson, Moskowitz, Abdus-Salaam and Román, JJ.