◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GARFIELD J. SORRELL, Appellant. [969 NYS2d 198]—

Spain, J. Appeal from a judgment of the Supreme Court (Lawliss, J.), rendered June 7, 2010 in Clinton County, upon a verdict convicting defendant of the crimes of predatory sexual assault against a child and endangering the welfare of a child.

Following a jury trial, defendant was convicted as charged of predatory sexual assault against a child and endangering the welfare of a child for repeatedly subjecting a child to sexual conduct between June 1, 2008 and February 28, 2009, when she was ages five and six and he was ages 25 and 26. The child first disclosed the abuse, which occurred before and during the time she was in first grade (the 2008-2009 school year), to defendant's wife in September 2009. The wife, defendant and child

lived together in the home where the abuse occurred. After her disclosure, the child revealed in varying detail to her pediatrician, a Child Protective Service caseworker (hereinafter CPS caseworker) and State Police investigators that defendant had repeatedly subjected her to specified acts of sexual abuse. At trial, the child, who was seven years old at that time, testified under oath that when no one else was home, defendant would show her "bad movies" for adults on his computer, usually in the living room, in which adults removed their clothing and "touch[ed] privates." After viewing these pornographic movies, defendant would take her to the back room of the residence, where they removed their clothing, and defendant would ask her what she would like to do from the pornographic movie; after she "pick[ed] one," they would "start doing it." The child described that while they did "different things" each time, defendant subjected her to acts that constituted sexual intercourse, touched her vagina with his hand and mouth, made contact between his penis and her vagina "almost all the time," compelled her to touch his penis with her hand and once with her mouth, and had the dog lick her vagina. Afterward, they would get dressed and go into the bathroom where the child, as taught by defendant, manually stimulated his exposed penis until he ejaculated, which she described and demonstrated for the jury. Defendant testified, denying that he ever had any sexual contact with the child and claiming that his wife had coached the child. Defendant was sentenced to 25 years to life for the predatory sexual assault conviction, an A-II felony, and a concurrent term of one year for the endangering conviction, a misdemeanor. Defendant now appeals.

The crime of predatory sexual assault against a child, as charged here to the jury, required the People to prove that defendant committed the crime of course of sexual conduct against a child in the first degree (*see* Penal Law § 130.96); that is, that defendant, being over age 18, for a period "not less than three months in duration," engaged in "two or more acts of sexual conduct, which include[d] at least one act of sexual intercourse [or] oral sexual conduct" with a child under age 13 (Penal Law § 130.75 [1] [b]). Defendant challenges the legal sufficiency and weight of the evidence. We find no merit to either argument.

Viewing the evidence in the light most favorable to the People, legally sufficient evidence was adduced to establish that defendant perpetrated the charged sexual conduct over a period of three months or more (*see People v Danielson*, 9 NY3d 342, 349 [2007]). The child's testimony established that defendant engaged in two or more acts of sexual conduct, indeed vastly

more than that, which included innumerable acts of sexual contact and at least one act of sexual intercourse or oral sexual conduct (*see* Penal Law § 130.00 [1], [2] [a]; [3]). The child testified that the abuse occurred "[a]lmost every day, [but] not every single day." Further, she testified that defendant began showing her pornographic movies on his desktop computer and subjected her to sexual contact prior to first grade, during the summer of 2008, and that it continued during the ensuing school year. The abuse continued after defendant's desktop computer broke down, which the evidence established occurred in 2009, and certainly no earlier than September or October 2008.[1] The child's account was consistent with her testimony that the abuse started before a specific event in which the wife found the dog licking the child's vagina, which the wife testified happened in June 2008. The foregoing was more than sufficient to establish that the sexual conduct repeatedly occurred over a period of three months or more.[2]

Likewise, while an acquittal "would not have been unreasonable . . . the jury was justified in finding the defendant guilty beyond a reasonable doubt" (*People v Danielson*, 9 NY3d at 348). Defendant focuses on inconsistencies in the child's testimony regarding the onset of the abuse, details of sexual conduct to which she testified at trial that she had not previously provided, the timing of the observed incident with the dog, and her description of the various body positions they assumed. While the child vacillated somewhat prior to and at trial with respect to whether the abuse began before or during first grade, she ultimately adhered to her testimony that it started before first grade, which was corroborated by the wife's observation of the child and the dog. Further, when defendant made admissions to the CPS caseworker and a State Police investigator, he remarked that the sexual contact had occurred around the time when he caught his wife "out having an affair," which he testified occurred on June 1, 2008. The wife also testified that, during that period of time, she left the child alone with defendant more often. Even assuming that the abuse ceased once defendant's desktop computer stopped working, more than the requisite three-month period was credibly established.

Moreover, the jury was justified in crediting the testimony of

---

**1.** The wife testified that defendant's desktop computer broke in January or February 2009, while defendant testified it broke in September or October 2008.

**2.** Defendant's challenge to the legal sufficiency of the evidence presented to the grand jury is precluded given that the judgment of conviction is based upon legally sufficient trial evidence (*see* CPL 210.30 [6]; *People v Smith*, 4 NY3d 806, 808 [2005]).

the child and the wife, and we give great deference to that determination (*see People v Hayes*, 104 AD3d 1050, 1054 [2013]; *People v Izzo*, 104 AD3d 964, 966-967 [2013]). Indeed, the child was a very articulate, believable witness whose straightforward account of the abuse was detailed and remarkably consistent regarding defendant's pattern of showing her pornographic movies and then directing her to act out specific sexual conduct. The medical testimony of a nurse practitioner with extensive experience in the examination of girls for sexual abuse evaluations established that the child had been vaginally penetrated, leaving "gross irregularities" in her hymenal rim with "complete transections" (interruptions) and scarring from tears, which the child could not have caused herself. Defendant's interest in sexual activity with preteen girls was confirmed by the forensic evaluation of his computer, which was owned and used only by defendant during the relevant period, and which revealed extensive Internet searches for such images.

Moreover, when confronted by police with the child's detailed allegations, defendant ultimately admitted that all of her allegations were true (except those pertaining to the dog), he realized he did "inappropriate things" and knew it was "wrong." He specifically admitted that he had touched the child's vaginal area with his hands in the back room, while she was naked, after they watched pornography, but claimed it only occurred one time. He thereafter signed a written statement admitting that, on one occasion, he had touched the child's vagina.[3] At trial, he testified that he made these highly incriminating admissions and signed a written statement after *Miranda* warnings, which he understood, in order to avoid arrest and allow him to return home to the child, which defies all reason and credibility. His assertion that his wife had coached the child does not withstand scrutiny. The recovered images of child pornography were downloaded onto his computer in March 2008, more than a year earlier, and the suggestion that she planted them to later frame him was not believable. Importantly, the pediatrician, State Police investigator and CPS caseworker all testified that the wife

---

**3.** According to the testimony, defendant attempted, in the same interview, to inconsistently minimize or deny his sexual conduct and its frequency, to retract his admissions, to explain away the child's knowledge of sexual acts and pornographic movies, to suggest the child had accidentally observed his penis or him masturbating, and that it was possible that there had been inadvertent sexual contact. He also denied having any pornography in the house, having Internet access, showing pornography to the child or having a computer until two weeks earlier. The police investigator testified that she only included admissions that defendant did not minimize or retract during the interview in defendant's written statement.

never prompted the child or answered for her, and the child testified that she was never told how to testify or what to say. The record is simply devoid of any proof supporting defendant's claim that the child's allegations and testimony were, to any extent, fabricated or coached.

Next, contrary to defendant's claim, Supreme Court's balanced and carefully circumscribed *Molineux* ruling did not deprive him of a fair trial. In response to the People's pretrial proffers,[4] the court issued a written decision, later revised, allowing police testimony describing three images depicting children engaged in sexual activity (but not the recovered images themselves), which had been downloaded or viewed on defendant's desktop computer in March 2008. The court also allowed evidence that a large number of Internet search terms—mostly pertaining to sexual activity with preteen girls—were entered between March 2008 and August 2008 on defendant's desktop computer. Also admitted was testimony that pornographic videos and images of adults were downloaded or viewed on defendant's desktop and laptop computers during the indictment period. The admissibility of the foregoing was contingent on the wife testifying, as she did, that she never downloaded, searched for or viewed them. The court disallowed, as too prejudicial, testimony regarding bestiality images, videos and search terms found on both of defendant's computers, or Internet "banners" (advertisements) that popped up on defendant's computer because they were not within the user's control.[5]

Evidence that adult pornography was downloaded on defendant's computer was admissible to corroborate the child's testimony that defendant compelled her to watch and select activities from such videos prior to engaging in sexual conduct,

---

**4.** State Police forensic investigators with the computer crime unit recovered over 2,500 adult pornographic images and videos on defendant's computers, 112 child erotica images, 16 of which were child pornography, 20 images and 37 videos of bestiality, mostly with dogs, and over 100 preteen sex-related search terms.

**5.** Supreme Court also ruled that the People could elicit testimony concerning 13 additional images of child pornography found on unallocated space on defendant's desktop computer, provided that all those who had access to the computer, prior to and after defendant received it in January or February 2008, testify that they did not download the images. Testimony established that deleted digital information goes to unallocated space on a computer's hard drive and may be overwritten—in whole or in part—when computer memory is needed. Because some of the digital information in these deleted files had been overwritten, it was not possible for the forensic computer examiner to determine when these images were acquired, last viewed or deleted. The People made the decision prior to trial that they would not elicit testimony related to those undated images, and they did not do so.

and was reflective of defendant's intent and motive (*see People v Dorm*, 12 NY3d 16, 19 [2009]; *People v Shofkom*, 63 AD3d 1286, 1287-1288 [2009], *lv denied* 13 NY3d 799 [2009], *appeal dismissed* 13 NY3d 933 [2010]; *People v Higgins*, 12 AD3d 775, 778 [2004], *lv denied* 4 NY3d 764 [2005]). This evidence was also "inextricably interwoven with the charged crimes, provide[d] necessary background [and] complete[d] [the child's] narrative" (*People v Tarver*, 2 AD3d 968, 969 [2003]; *see People v Poquee*, 9 AD3d 781, 782 [2004], *lv denied* 3 NY3d 741 [2004]). The presence of child pornography and related search terms on defendant's computers prior to and during the indicted time period was highly relevant and probative of material, disputed issues at trial, not only to establish defendant's intent and motive for committing sexual acts of this nature against a young child, but also to establish the absence of mistake or accident, given that the sexual contact must have been for purposes of sexual gratification (*see* Penal Law § 130.00 [3]; *People v Cass*, 18 NY3d 553, 559-560 [2012]; *People v Higgins*, 12 AD3d at 778). While intent can often be inferred from the sexual act itself (*see People v Vargas*, 88 NY2d 856, 858 [1996]; *People v Buskey*, 45 AD3d 1170, 1174 [2007]), here, defendant claimed to the police investigator and the CPS caseworker that much of the sexual contact and the child's knowledge occurred accidentally. The foregoing was, thus, admissible to prove that defendant's charged sexual contact was not accidental or mistaken but, rather, was intentional and sexual (*see People v Dorm*, 12 NY3d at 19; *People v Irvine*, 52 AD3d 866, 867-868 [2008], *lv denied* 11 NY3d 737 [2008]; *People v Poquee*, 9 AD3d at 782; *People v Yagunoff*, 266 AD2d 723, 725 [1999], *lv denied* 94 NY2d 886 [2000]) and motivated by his unusual sexual interest in young children. Supreme Court carefully considered the prejudicial effect of the evidence, limited or excluded much of it, including the actual images and videos, and provided numerous contemporaneous and appropriate limiting instructions. We cannot conclude that the court abused its discretion in finding that the probative value of the admitted evidence outweighed the potential for undue prejudice (*see People v Cass*, 18 NY3d at 560 and n 3; *People v Jones*, 101 AD3d 1482, 1483 [2012]). Finally, the People, as required, alerted the court and defendant, in advance, of the evidence sought to be admitted and the permissible, nonpropensity purposes for which it would be introduced at trial; extended arguments were heard on the record and no formal hearing beyond that was necessary (*see People v Holmes*, 260 AD2d 942, 943 [1999], *lv denied* 93 NY2d 1020 [1999]).

With regard to defendant's contention that the People failed to abide Supreme Court's *Molineux* ruling by eliciting descrip-

tive testimony pertaining to five images of child pornography downloaded on defendant's desktop computer in March 2008, rather than the three images contemplated by the court's ruling, the issue is unpreserved, as no objection was raised to the testimony. In any event, the clear import of the court's revised *Molineux* ruling is that such images were relevant and probative and, given the described similarity in content and date of the two additional images, we find that the testimony did not violate the intent of the court's *Molineux* ruling.

We further find that Supreme Court did not err in failing to continue to respond to jury notes after the jury indicated it had rendered a verdict. The jury's verdict was taken without objection from counsel and, thus, any claims are unpreserved that the court erred either in failing to inquire of the jury whether it wanted to hear the remainder of the child's testimony or in not responding to a second note (*see People v Starling*, 85 NY2d 509, 516 [1995]). In any event, the court rightfully concluded that, by handing up a note stating that it had rendered a verdict prior to the court's full response to its inquiries, the jury had resolved its questions and was no longer in need of the requested information (*see People v Cornado*, 60 AD3d 450, 451 [2009], *lv denied* 12 NY3d 913 [2009]; *People v Albanese*, 45 AD3d 691, 692 [2007], *lv denied* 10 NY3d 761 [2008]; *People v Quintana*, 262 AD2d 101, 101 [1999], *lv denied* 94 NY2d 865 [1999]). We further find that the verdict was not the product of undue delay (*see People v Albanese*, 45 AD3d at 692) and that the court followed proper procedure (*see* CPL 310.30; *People v O'Rama*, 78 NY2d 270, 276-279 [1991]).

Next, upon review of the record as a whole, we find that the prosecutor did not engage in a pervasive pattern of flagrant misconduct so as to require reversal of defendant's conviction (*see People v Wright*, 88 AD3d 1154, 1158 [2011], *lv denied* 18 NY3d 863 [2011]; *People v Hunt*, 39 AD3d 961, 963-964 [2007], *lv denied* 9 NY3d 845 [2007]). Defense counsel's objections were sustained to the prosecutor's questions of defendant on cross-examination, which were neither flagrant nor substantially prejudicial (*see People v Wright*, 88 AD3d at 1158). While the exact start and end dates of the sexual abuse was a sharply disputed issue at trial, we agree that it was inappropriate for the prosecutor in summation to state that she was "sorry if the little girl couldn't tell you exactly what date [defendant] stopped raping her" and that the search terms reflect that defendant "likes little libidos," but no objections were raised (*see People v Harris*, 98 NY2d 452, 491 n 18 [2002]). Moreover, we do not find that these fleeting references were so inflammatory as to deprive

defendant of a fair trial (*see People v Nelson*, 68 AD3d 1252, 1255 [2009]).

While essentially conceding that defendant was meaningfully represented throughout most of the trial, defendant argues that "a few critical errors by defense counsel" deprived him of a fair trial, requiring reversal. When the People attempted to introduce the child's grand jury testimony into evidence, defense counsel stipulated, incorrectly, that the child had testified at the grand jury to penile penetration, apparently to prevent the admission of the entire testimony. Given that defense counsel had repeatedly elicited for the jury that the child had not provided this description at the grand jury proceedings,[6] we cannot conclude that counsel's stipulation—while puzzling—was so egregious and prejudicial as to deprive defendant of a fair trial (*see People v Turner*, 5 NY3d 476, 480 [2005]; *People v Caban*, 5 NY3d 143, 152 [2005]). Moreover, counsel made appropriate pretrial motions, successfully raised objections throughout trial and presented a cogent, although ultimately unpersuasive, defense. Viewed in totality, defendant received meaningful representation (*see People v Edwards*, 96 AD3d 1089, 1092 [2012], *lv denied* 19 NY3d 1102 [2012]).

Lastly, in view of the deplorable and grievous sexual abuse and harm inflicted upon a child in his care at such a very young age, and defendant's unspeakable breach of trust, we do not find that Supreme Court's imposition of the maximum sentence warrants a reduction in the interest of justice.

Rose, J.P., Stein and Garry, JJ., concur. Ordered that the judgment is affirmed.

---

**6.** At trial, without objection, the child used her finger and ear to demonstrate that defendant inserted his penis into her vagina. On cross-examination, the child conceded that when she demonstrated this at the grand jury proceedings, she only touched the outside of her ear with her finger (although she also testified at trial that she did not remember that earlier demonstration). On redirect, she adhered to her testimony that defendant's penis went into her vagina and, on re-cross-examination, she was pressed about why she had not previously told that to the grand jury, the State Police investigator or the CPS caseworker.