Spain, J.
Appeals (1) from a judgment of the Supreme Court (Lawliss, J.), rendered September 8, 2008 in Clinton County, upon a verdict convicting defendant of the crimes of course of sexual conduct against a child in the second degree, criminal sexual act in the first degree, predatory sexual assault against a child (three counts), rape in the first degree (two counts) and rape in the third degree, and (2) by permission, from an order of said court, entered January 30, 2012 in Clinton County, which denied defendant’s motion pursuant to CPL article 440.10 to vacate the judgment, without a hearing.
Defendant was charged in a 14-count indictment with various sex crimes related to his sexual abuse of two girls: victim A, a female relative born in August 1994, for crimes occurring when she was under the age of 13; and victim B, a neighbor born in August 1990, for crimes occurring when she was between the ages of 9 and 16. After a Huntley hearing, Supreme Court denied defendant’s motion to suppress his statements to police, admitting certain sex acts against victim A, but denying all allegations related to victim B. After a jury trial at which both victims testified, one count was dismissed and two counts were reduced, and defendant was convicted as to seven counts pertaining to victim A: course of sexual conduct against a child in the second degree, criminal sexual act in the first degree, three counts of predatory sexual assault against a child and two counts of rape in the first degree. Defendant was also convicted of rape in the third degree as to victim B.[1] Upon his convictions, defendant was sentenced to an aggregate prison term of SSVs years to life. Defendant’s subsequent motion to vacate the judgment of conviction was denied, and he now appeals from both the judgment and, with permission, the order denying his motion.
Initially, we disagree with defendant’s claim that Supreme Court erred in denying his motion to suppress the oral and written statements he made to police on October 16, 2007, as his right to counsel was not violated when police declined his requests to call his wife during questioning. The uncontroverted Huntley testimony supports the court’s conclusion that, after victim A’s disclosure, defendant voluntarily went to the State Police barracks with a state trooper, where he was advised of and validly waived his Miranda rights and agreed to speak with police investigators (see People v Cole, 24 AD3d 1021, 1022-1023 [2005], lv denied 6 NY3d 832 [2006]). At no point during the *1142 three-hour questioning did defendant ask to speak with or call an attorney, or to call family or friends to assist in contacting an attorney, so as to invoke his right to counsel (see People v Lopez, 16 NY3d 375, 380 [2011]). While defendant’s requests to call his wife were denied, he did not indicate that he wanted to seek her assistance in securing an attorney or legal advice; instead, when given an opportunity to explain his request to call his wife, he said that he “wasn’t sure” what he would say to her, thereby failing to unequivocally assert his right to counsel (see People v Glover, 87 NY2d 838, 839 [1995]; People v Kuklinski, 24 AD3d 1036, 1037 [2005], lv denied 7 NY3d 758 [2006]). Thus, it cannot be said that police “sealed off the most likely avenue by which the assistance of counsel [could] reach him by means of deception and trickery” (People v Townsend, 33 NY2d 37, 41 [1973]; see People v Salaam, 83 NY2d 51, 55-56 [1993]; cf. People v Talamo, 55 AD2d 506, 507 [1977]).
The police accordingly did not foreclose defendant’s opportunity to invoke his right to counsel and defendant, despite being a competent adult who was capable of invoking that right at any time, failed to do so. Additionally, there was no evidence that his wife had retained counsel for him, or that he sought to contact her for that purpose, and his whereabouts were not concealed from her or from a potential attorney (see People v Salaam, 83 NY2d at 55-56; People v Crimmins, 64 NY2d 1072, 1073 [1985]; People v Wells, 18 AD3d 1022, 1023-1024 [2005], lv denied 5 NY3d 796 [2005]; cf. People v Bevilacqua, 45 NY2d 508, 513 [1978]; People v Townsend, 33 NY2d at 41). In the absence of any threats, deception or trickery or any direct or indirect request for counsel, the People satisfied their burden of demonstrating that defendant’s statements were voluntary and obtained in compliance with his constitutional rights. Defendant’s suppression motion was properly denied.
Next, we reject defendant’s contention that the convictions were against the weight of the evidence. Inasmuch as a different verdict would not have been unreasonable, we weigh the relative probative force of the conflicting testimony and the relative strength of the competing inferences that can be drawn from the testimony (see People v Danielson, 9 NY3d 342, 348 [2007]; People v Bleakley, 69 NY2d 490, 495 [1987]). Victim A, age 13 at trial, testified that defendant began touching her in March 2006, prior to a specific occasion when she was 11 years old and sleeping at defendant’s house; she recounted how he touched her vagina that night and, one week later, he did so again under similar circumstances; defendant continued to do so approximately once a week at various locations, and often *1143 during the day. She told defendant to stop each time, which defendant refused, telling her it was their “little secret” and she “like[d] it.” This testimony established persuasively defendant’s guilt of course of sexual conduct against a child in the second degree (count 1). Victim A also testified that defendant’s abuse stopped for a few weeks around her birthday in August 2006 but that, during this time, he would not talk to her or do anything with her, whereas when he was touching her, he gave her whatever she wanted. This was consistent with defendant’s statements to police that he gave victim A what she wanted if she let him touch her.
Victim A further described, in detail, incidents when she was 12 years old in November 2006, around Thanksgiving, when defendant forced his mouth on her vagina while she was in bed at night and, after Thanksgiving but before Christmas, when defendant subjected her to sexual intercourse in his bedroom and ejaculated into his underwear. This testimony established, convincingly in our view, defendant’s guilt of rape in the first degree (count 4), predatory sexual assault against a child (counts 3 and 5) and criminal sexual act in the first degree (count 2). With regard to the remaining counts pertaining to victim A, she testified to a particularly degrading incident in early 2007, when she was still 12 years old, in which defendant pushed her into the bathroom, held her face down on a dog cage and engaged in forcible sexual intercourse with her. This amply demonstrated defendant’s guilt of rape in the first degree (count 8) and predatory sexual assault against a child (count 9).
In attacking the weight of the evidence, defendant downplays the significance of his oral and written statements to police in October 2007. However, while attempting to shift some of the blame to victim A, defendant admitted to touching and penetrating her vagina with his fingers, and touching her breasts and “butt” once or twice a week beginning a year earlier; he also admitted that he put his mouth on her vagina about once a month and that, at times, her hand touched his penis. He also claimed that he tried to insert his penis in her vagina but she told him to stop and he did stop. This provided compelling additional proof of defendant’s crimes against victim A.
Victim B, age 17 at trial, testified that defendant began sexually abusing her when she was 10 years old, and that the abuse continued for years. She recounted that defendant treated her well, often bought her things and told her she was pretty and had nice hair. As relevant to defendant’s conviction of rape in the third degree of victim B under count 14, she testified to an incident in the summer of 2006 in which defendant subjected *1144 her (at age 12 or 13) to sexual intercourse. The incident occurred one evening on a boat stored in defendant’s driveway where the victims had been playing cards. Victim A’s testimony corroborated this account in many respects and, while their recollections were not identical, they were substantially similar and persuasively established this crime against victim B. Notably, both victims testified that defendant showed them pornography at his house, and the parties stipulated that the victims gave accurate descriptions of the sexual activity contained on videotapes found in defendant’s home, in a location described by the victims.
Defendant’s challenge to the weight of the evidence focuses on the victims’ motives to lie, inconsistencies between the victims’ accounts, their lack of specificity and piecemeal disclosure, the lack of medical evidence, and their credibility, all of which were fully explored at trial for the jury. The internal and comparative inconsistencies in the victims’ testimony did not relate to whether the described sexual conduct was repeatedly committed by defendant against them (see People v Nowinski, 36 AD3d 1082, 1084 [2007], lv denied 8 NY3d 989 [2007]), and the jury rejected defendant’s claim that the allegations had been fabricated by convicting defendant of most charges (see People v Warner, 69 AD3d 1052, 1054 [2010], lv denied 14 NY3d 894 [2010]). We accord great deference to the jury’s opportunity to view the victims’ testimony and assess their credibility, as well as their ability to recall the specific details and time frames of particular sex crimes, and we discern no reason to disturb that assessment (see People v Cecunjanin, 67 AD3d 1072, 1076 [2009], affd 16 NY3d 488 [2011]; People v Weber, 25 AD3d 919, 921 [2006], lv denied 6 NY3d 839 [2006]). Given the jury’s determination to convict defendant of 8 of 13[2] counts submitted to it, the fact that the jury acquitted defendant of some counts as to each victim (four counts in all) did not necessarily mean that the jury discounted the victims’ credibility as to the remaining counts.
The reasons for the victims’ delayed reporting of the ongoing sexual abuse were probed in depth at trial, and the jury was aided by the expert testimony of Richard Hamill, who explained, in general terms, the many behaviors exhibited by child victims of sexual abuse, including delayed disclosure, known as child sexual abuse accommodation syndrome (hereinafter CSAAS) (see People v Carroll, 95 NY2d 375, 387 [2000]; see also People v Spicola, 16 NY3d 441, 465-466 [2011], cert denied 565 US —, 132 S Ct 400 [2011]). Victim A testified that she finally disclosed *1145 the abuse to a guidance counselor in school in 2007 because she feared defendant would “move on” to her two younger sisters like he had done when he moved from abusing the older victim B to herself, and because defendant had been making threats that he would make her “pay up” and go “harder and longer” as pay back for his having paid the fee of a breeder to breed her dog. Victim B testified that she did not disclose the abuse when it began years earlier because she did not want defendant’s wife to refuse to continue babysitting for her and her younger brother or to get mad at her. She liked being with defendant’s family, where she was treated well aside from the abuse and which she preferred to her troubled home, in which domestic violence was an ongoing problem. Victim B first revealed the abuse when questioned by police, who had learned of it from victim A. Given the foregoing, we do not find that the jury erred in crediting the victims’ accounts as to the crimes for which defendant was convicted, or that it failed to give the evidence— including defendant’s admissions to police — the weight that it deserved.
With regard to Hamill’s CSAAS testimony, he was very clear that he had not met or examined the victims or defendant and could not express any opinion as to their credibility or whether the charged crimes occurred; he at all times stayed within the permissible parameters of expert testimony explaining the common behaviors of victims of child sex abuse that the jury may not understand (see People v Spicola, 16 NY3d at 465-466; People v Carroll, 95 NY2d at 387; People v Williams, 50 NY2d 996, 998 [1980]; People v Greene, 306 AD2d 639, 642-643 [2003], lv denied 100 NY2d 594 [2003]; cf. People v Williams, 20 NY3d 579, 583-584 [2013]). To be sure, the better practice is for the trial court to provide a contemporaneous limiting instruction, repeated during the final charge, clarifying that CSAAS testimony is not offered as proof of the crime charged (see CJI2d[NY] Expert on a Crime Victim Syndrome; see e.g. People v Kukon, 275 AD2d 478, 479 [2000], lv denied 95 NY2d 936 [2000]; People v Archer, 232 AD2d 820, 822 [1996], lv denied 90 NY2d 938 [1997]; cf. People v Justice, 99 AD3d 1213, 1215 [2012], lv denied 20 NY3d 1012 [2013]; People v Gregory, 78 AD3d 1246, 1247-1248 [2010], lv denied 16 NY3d 831 [2011]). However, defense counsel did not request such an instruction or object to the final charge as given; thus, this issue is not preserved (see People v Adoms, 92 AD3d 450, 451 [2012], lv denied 19 NY3d 970 [2012]; People v Wright, 5 AD3d 873, 876-877 [2004], lv denied 3 NY3d 651 [2004]). Similarly, defendant raised no objections to the prosecutor’s summation remarks related to Hamill’s testimony and, as such, any issues related thereto are not preserved for our review.
*1146 Reviewing these issues in the context of defendant’s ineffective assistance of counsel claim, we find that he was not deprived of a fair trial or the effective assistance of counsel owing to counsel’s failure to request a limiting instruction or to object to the summation. Indeed, the prosecutor repeatedly made clear in her summation that Hamill “didn’t talk to” the victims or defendant, and “didn’t know anything about this case.” This minimized any confusion due to the prosecutor’s remarks that Hamill presented “evidence in the case” which “explained to you” and “described what these kids. . . go through!,] what these girls went through” and “described why they didn’t tell.” While isolated prosecutorial summation remarks, taken out of context, may have been unclear or even arguably improper, the summation as a whole urged that Hamill’s general testimony “supplied] explanations other than fabrication^] for [the victims’] post-molestation behavior,” thereby supporting their credibility, and did not impermissibly argue that Hamill had opined that these crimes had occurred or that the victims were credible (People v Spicola, 16 NY3d at 466). Thus, the summation argument — that Hamill’s testimony regarding the behavioral characteristics of sexually abused children — was consistent with and explanatory of the victims’ behavior in this case and constituted fair comment on the evidence (see People v Martinez, 68 AD3d 1757, 1758 [2009], lv denied 14 NY3d 803 [2010]). Moreover, “the prosecutor did not engage in a pervasive pattern of flagrant misconduct so as to require reversal of defendant’s conviction[s]” (People v Sorrell, 108 AD3d 787, 793 [2013]). Given defendant’s admissions to police regarding his sexual abuse of victim A, and victim A’s testimony corroborating defendant’s sexual abuse of victim B, the verdicts did not turn solely on the credibility of one victim, and we are persuaded that the evidence was overwhelming and that any error was harmless (see People v Williams, 20 NY3d at 584-585).
Defendant was otherwise provided meaningful representation by counsel, who made appropriate pretrial motions, effectively cross-examined witnesses, and delivered cogent opening and closing remarks in support of the defense theory — albeit unsuccessful — that the victims had fabricated the allegations and that defendant had not made admissions to police (see People v Henry, 95 NY2d 563, 566 [2000]; People v Benevento, 91 NY2d 708, 714 [1998]). Counsel also obtained a reduction of some counts, dismissal of another count, and acquittal on five counts. With regard to defendant’s claim that he was prejudiced by counsel’s decision to admit a photograph of his erect penis, he has not demonstrated the absence of strategic or other legitimate explanations for counsel’s decision (see People v Benevento, 91 *1147 NY2d at 712; People v Rivera, 71 NY2d 705, 709 [1988]). After both victims described repeated sexual abuse, including in daylight, when they had an opportunity[3] to view defendant’s legs and erect penis, defense counsel elicited that neither was able to describe them or anything unusual or distinctive about them; defense counsel submitted the pictures in issue to demonstrate that defendant had visible scars on his legs and papules (or bumps) visible on his erect penis to discredit the victims’ accounts. Counsel also used the picture to impeach their testimony by suggesting that repeated penetration by a penis of this size on a young girl would have left medical evidence, which was not found. There is, thus, no merit to this claim.
Supreme Court did not abuse its discretion by denying defendant’s motion to vacate the judgment without a hearing (see CPL 440.30 [4]). To the extent that defendant claims that the People withheld exculpatory evidence, his witness on that point effectively recanted her earlier affidavit and, in view of the People’s affidavits undermining this claim, no issue of fact was presented (see CPL 440.10 [1] [b], [h]; People v Samandarov, 13 NY3d 433, 436, 439-440 [2009]). With regard to defendant’s claim that newly discovered evidence required that his conviction be vacated (see CPL 440.10 [1] [g]), defense counsel’s ultimate concession that the police interview notes at issue were in his file belied any claim that the evidence “could have not been discovered before the trial [and produced at trial] by the exercise of due diligence” (People v Lackey, 48 AD3d 982, 983 [2008], lv denied 10 NY3d 936 [2008]). As there was no factual dispute, the court providently decided the motion without a hearing (CPL 440.30 [4]).
Finally, we discern no basis for reducing defendant’s sentence. As the aggregate maximum term of defendant’s consecutive sentences included determinate and indeterminate sentences and included three or more violent felony offenses, one of which is a class B violent felony offense (i.e., counts 2 [criminal sexual act in the first degree], 4 and 8 [rape in the first degree]; see Penal Law § 70.02 [1] [a]), by operation of law, the Department of Corrections and Community Supervision will cap defendant’s sentence to a 50-year determinate term (see Penal Law § 70.30 [1] [e] [vii]; People v Moore, 61 NY2d 575, 578 [1984]; People v Swinton, 87 AD3d 491, 494 [2011], lv denied 18 NY3d 862 *1148 [2011]). Given the protracted and grievous nature of defendant’s crimes against two young girls and the impact of these crimes on their lives, we find no abuse of discretion or extraordinary circumstances warranting a reduction of the sentence in the interest of justice (see People v Sorrell, 108 AD3d at 794; People v Shultis, 61 AD3d 1116, 1118 [2009], lv denied 12 NY3d 929 [2009]).
Lahtinen, J.E, McCarthy and Egan Jr., JJ., concur. Ordered that the judgment and order are affirmed.

. Defendant was found not guilty of two counts as to victim A and three counts as to victim B.

. Count 11 was dismissed at trial based upon insufficient evidence.

. Victim A testified that she saw defendant’s penis on multiple occasions and up close but did not “examine” it and had not previously seen one. Victim B testified that she closed her eyes during the sexual abuse and never saw defendant’s penis, and was not sure if she had seen his legs but did not recall any marks or scars on them.