■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT BRAITHWAITE, Appellant. [6 NYS3d 128]—

Appeal by the defendant from a judgment of the Supreme Court, Richmond County (Rooney, J.), rendered June 14, 2013, convicting him of assault in the second degree and criminal possession of a weapon in the third degree, upon a jury trial, and imposing sentence.

Ordered that the judgment is affirmed.

On May 1, 2012, at approximately 5:30 p.m. in the New Brighton section of Staten Island, the defendant followed the complainant, a casual acquaintance, into a neighborhood grocery store and attacked him with a box cutter. The attack was recorded on videotape by the store's surveillance cameras. The complainant sustained, among other injuries, lacerations to his left cheek and right index finger. He was treated the same day at Richmond University Medical Center by Dr. Ragjava Raju, who sutured the lacerations and testified at trial as the People's expert in plastic surgery.

A person is guilty of assault in the second degree when, "[w]ith intent to cause physical injury to another person, he [or she] causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.05 [2]). A person is guilty of criminal possession of a weapon in the third degree when "[s]uch person [possesses any dagger, dangerous knife, dirk, razor . . . or any other dangerous or deadly instrument or weapon with intent to use the same unlawfully against another] and has been previously convicted of any crime" (Penal Law §§ 265.01 [2]; 265.02 [1]).

The defendant concedes that he assaulted the complainant, as documented by the store's surveillance camera, but contends that the evidence was legally insufficient to establish that he used a box cutter, or any sharp instrument, to inflict the lacerations on the complainant's cheek and finger. The defendant asserts that, instead, the wounds could have been caused by the complainant falling against the sharp edge of an ice cream freezer that was in the area of the altercation.

Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620 [1983]), we find that it was legally sufficient to establish that the defendant possessed a box cutter, which he used to inflict the wounds to the complainant's face and finger (see Penal Law §§ 120.05 [2]; 265.01 [2]; 265.02 [1]; People v Ricone, 288 AD2d 402 [2001]; People v Tucker, 185 AD2d 908, 909 [1992]).

Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15 [5]; People v Danielson, 9 NY3d 342 [2007]), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410 [2004]; People v Bleakley, 69 NY2d 490, 495 [1987]). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633 [2006]). Here,

the complainant testified that, after the defendant's hand swung toward him, he felt "a little snip" on his left cheek. He then noticed that the defendant was holding a silver box cutter, about five inches long, with a sharp-edged razor blade. When the complainant attempted to grab the defendant's right hand and stop him, the complainant's right index finder was cut by the blade. Although the defendant contends that the medical experts who testified at trial did not rule out the possibility that the lacerations to the complainant's face could have been caused by falling against the exposed metal rim of the ice cream freezer, Dr. Raju testified that it was "almost impossible." Dr. Raju testified that in order for the complainant's injuries to have been caused by falling against the freezer, he would have had to assume an "awkward position," placing his face against the freezer and sliding it along the metal rim, without touching any other part of his skin to the metal. The statements of the two employees who were behind the register when the incident began that they did not see any sharp object or blood, as well as the conflicting testimony of the experts, merely presented a credibility issue for determination by the jury, and there is no basis to disturb the jury's resolution of that issue in favor of the prosecution (*see People v Olson*, 35 AD3d 890 [2006], *affd* 9 NY3d 968 [2007]).

The Supreme Court providently exercised its discretion in declining to declare a mistrial based on the prosecutor's brief mention of, and the complainant's isolated, unsolicited reference to, the defendant's attempted robbery of the complainant, an uncharged crime. While the references were improper (*see People v Morris*, 21 NY3d 588, 594 [2013]; *People v Ventimiglia*, 52 NY2d 350, 359 [1981]; *People v Molineux*, 168 NY 264, 293 [1901]), any prejudice to the defendant was mitigated when the court sustained the objection to the complainant's statement and issued an immediate curative instruction to the jury, and by the court's clear instructions, during opening remarks and in its charge to the jury, that "testimony that the Court has excluded or told you to disregard is not evidence and must not be considered" (*see People v Townsend*, 100 AD3d 1029, 1030 [2012]; *People v Benloss*, 60 AD3d 686, 687 [2009]; *People v Whitely*, 41 AD3d 622, 623 [2007]).

The Supreme Court providently exercised its discretion in permitting the People to offer certain evidence as to consciousness of guilt. While this evidence was equivocal (*see People v Bennett*, 79 NY2d 464, 470 [1992]; *People v Moses*, 63 NY2d 299, 308 [1984]; *People v Yazum*, 13 NY2d 302, 304 [1963]), it tended to prove the People's contention that the defendant

avoided the police because he was guilty of the instant crime (*see People v Yazum*, 13 NY2d 302 [1963]; *People v Scharpf*, 60 AD3d 1101, 1103 [2009]; *People v Young*, 51 AD3d 1055, 1056-1057 [2008]; *People v Faulk*, 192 AD2d 717, 717 [1993]). Any ambiguity, as well as the limited probative worth of that evidence, was made perfectly clear to the jury by the court's lengthy limiting instructions (*see People v Yazum*, 13 NY2d at 304; *People v Faulk*, 192 AD2d at 717).

The defendant's contention that the Supreme Court erred in its handling of a jury note is unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Alcide*, 21 NY3d 687, 694 [2013]; *People v Ramirez*, 15 NY3d 824, 826 [2010]; *People v Albanese*, 45 AD3d 691, 692 [2007]). Defense counsel was given notice of the contents of the note, and was informed of the substance of the court's intention not to respond to it because the jury had, in the meantime, sent a note indicating it had reached a verdict. Defense counsel interposed no objection when the court solicited comments from counsel. In any event, the fact that a verdict was reached before the court could respond to the jury note implied that the jury had resolved the issue on its own (*see People v Sorrell*, 108 AD3d 787, 793 [2013]; *People v Albanese*, 45 AD3d at 692; *People v Quintana*, 262 AD2d 101 [1999]). Balkin, J.P., Hall, Miller and Duffy, JJ., concur.