■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ERNEST BROWNLEE, Respondent.—Appeal by the People, as limited by their brief, from so much of an order of the Supreme Court, Queens County (Rotker, J.), dated March 28, 1983, as granted that branch of the defendant's omnibus motion which was to dismiss the indictment.

Order reversed insofar as appealed from, on the law, that branch of the defendant's omnibus motion which was to dismiss the indictment denied, indictment reinstated, and matter remitted to the Supreme Court, Queens County, for further proceedings in accordance herewith.

By indictment No. 4085/82, the defendant was accused of murder in the second degree and criminal possession of a weapon in the second degree in connection with the shooting death of one Malcolm Adams. The evidence before the Grand Jury consisted of the testimony of an eyewitness and three documents, certified as true copies by the Office of the Chief Medical Examiner of the City of New York, namely, (1) a copy of a certificate of death naming Malcolm Wayne Adams as the deceased, (2) a copy of a form from the Chief Medical Examiner's office entitled "Personal Identification of Body" which was signed by Margaret Adams and stated that she had identified the decedent as her son, Malcolm Wayne Adams, and (3)

another form from the Chief Medical Examiner's office entitled "Police Identification of Body" which was signed by Police Officer Robert Ambrose and stated that he had identified the body of the decedent at the office of the Medical Examiner as the same body which was found at the scene of the crime. The eyewitness testified that she saw a person known to her as "Love" shoot the victim, but there is no doubt that the questions that led to her identifying "Love" as the instant defendant were leading.

Criminal Term found this evidence insufficient to sustain the indictment, reasoning that the documents which were the only evidence of the identity of the deceased constituted inadmissible hearsay, and that the eyewitness testimony identifying the shooter as the defendant had been elicited by improper leading questions. We disagree and reinstate the indictment.

Pursuant to Public Health Law § 4103 (3), a certified copy of a death certificate "shall be prima facie evidence in all courts and places of the facts therein stated". Since the identity of the decedent is a fact stated in the certificate of death, it is established prima facie by virtue of this statute, without regard to the statement of the mother which Criminal Term found to be inadmissible. A prima facie showing being what is required before the Grand Jury (see, People v Brewster, 63 NY2d 419, 422; People v Mayo, 36 NY2d 1002, 1004), the identity of the decedent was sufficiently established for its purposes.

The testimony of the eyewitness was needed to establish the defendant's commission of the crime. In the circumstances here the fact that the identity of the defendant was elicited by the use of leading questions does not render this evidence incompetent, and therefore subject the indictment to dismissal under the rule that an indictment must be based on competent evidence (CPL 70.10 [1]; CPL 190.65; People v Pelchat, 62 NY2d 97). Whether a question is impermissibly leading is, even in the context of a criminal trial, a matter of discretion (see, People v Greenhagen, 78 AD2d 964, 966; Richardson, Evidence § 487 [Prince 10th ed]). In light of the fact that no corporeal identification of the defendant was possible before the Grand Jury, and since, in describing the incident, it was only the real name of that person that was missing, we conclude that the prosecutor's leading question as to that name was not fatal to the indictment. Lazer, J. P., Rubin, Kunzeman and Kooper, JJ., concur.