[998 NE2d 810, 976 NYS2d 10]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PATRICK A. ASARO, Appellant.

Argued September 10, 2013; decided October 22, 2013

## POINTS OF COUNSEL

*Ostrer & Hoovler, P.C.,* Chester (*Benjamin Ostrer* of counsel), for appellant. I. Expert testimony was improperly admitted. (*Frye v United States,* 293 F 1013; *People v Wesley,* 83 NY2d 417; *Maryland v Craig,* 497 US 836.) II. A *Frye* hearing was required. (*Cassano v Hagstrom,* 5 NY2d 643; *Tucker v Elimelech,* 184 AD2d 636; *Matott v Ward,* 48 NY2d 455; *Gross v Friedman,* 138 AD2d 571, 73 NY2d 721.) III. The proof was insufficient. (*People v Contes,* 60 NY2d 620; *People v Conway,* 6 NY3d 869; *People v Boutin,* 75 NY2d 692; *People v Haney,* 30 NY2d 328; *People v Cabrera,* 10 NY3d 370; *People v Montanez,* 41 NY2d 53; *People v Green,* 56 NY2d 427; *People v Stanfield,* 36 NY2d 467; *People v Kern,* 149 AD2d 187.) IV. The verdict was repugnant. (*People v Schaffer,* 80 AD2d 865.) V. The expert's testimony should have been stricken. (*Perma Research & Dev. v Singer Co.,* 542 F2d 111; *People v DaGata,* 86 NY2d 40; *United States v Russo,* 480 F2d 1228; *People v Copicotto,* 50 NY2d 222; *People v Pitts,* 93 NY2d 571.) VI. The expert testimony was improperly bolstered. (*Dougherty v Milliken,* 163 NY 527; *People v Wernick,* 89 NY2d 111; *People v Ciaccio,* 47 NY2d 431.) VII. The failure to disclose the unreliability of the needle slap evidence constituted a *Brady* violation. (*People v Santorelli,* 95 NY2d 412; *People v Crandall,* 38 AD3d 996, 9 NY3d 842; *People v Oglesby,* 12 AD3d 857, 5 NY3d 792; *Brady v Maryland,* 373 US 83; *People v Baxley,* 84 NY2d 208; *People v Bond,* 95 NY2d 840; *People v Vilardi,* 76 NY2d 67.)

*Francis D. Phillips, II,* Goshen (*Robert H. Middlemiss* and *Andrew R. Kass* of counsel), for respondent. I. The trial court's

negative inference jury instruction was sufficient to cure the loss of Trooper Pirtle's notes. (*People v Colavito*, 87 NY2d 423; *People v DaGata*, 86 NY2d 40; *Matter of Miller v Schwartz*, 72 NY2d 869; *Brady v Maryland*, 373 US 83; *People v Rosario*, 9 NY2d 286, 980, 368 US 866; *People v Button*, 276 AD2d 229; *Green v Artuz*, 990 F Supp 267; *Morrison v McClellan*, 903 F Supp 428; *Crawford v Washington*, 541 US 36; *Melendez-Diaz v Massachusetts*, 557 US 305.) II. The jury's verdict was supported by legally sufficient evidence. (*People v Contes*, 60 NY2d 620; *People v Norman*, 85 NY2d 609; *People v Taylor*, 94 NY2d 910; *People v Benzinger*, 36 NY2d 29; *People v Rhodes*, 49 AD3d 668; *People v Romero*, 7 NY3d 633; *People v Licitra*, 47 NY2d 554; *People v Racine*, 132 AD2d 899.) III. References to defendant's speedometer were fair comment on the evidence and did not affect defendant's fundamental rights. (*People v Nichols*, 35 AD3d 508; *People v Leka*, 209 AD2d 723; *Brady v Maryland*, 373 US 83; *People v Fuentes*, 12 NY3d 259; *People v Hayes*, 17 NY3d 46; *People v Johnson*, 303 AD2d 208; *People v Alvarez*, 44 AD3d 562; *People v De Tore*, 34 NY2d 199; *People v Henry*, 60 AD3d 1083; *People v Giuca*, 58 AD3d 750.)

**OPINION OF THE COURT**

GRAFFEO, J.

The primary issue before us is whether defendant's convictions for manslaughter in the second degree and assault in the second degree, each predicated on the mental state of recklessness, are supported by legally sufficient evidence. We conclude that they are and therefore affirm.

In the early morning hours of November 22, 2008, defendant Patrick Asaro was driving his vehicle with four passengers on a rural two-lane road in Orange County. He suddenly stopped his car, revved the engine and quickly accelerated to speeds far in excess of the posted limit of 55 miles per hour. Ignoring an urgent plea from one of his passengers to slow down, he crossed the double yellow line and struck an oncoming car head-on, instantly killing the driver and injuring the passenger in the other vehicle. All four passengers in defendant's car sustained injuries. As a result, defendant was indicted for manslaughter in the second degree (Penal Law § 125.15 [1]), criminally negligent homicide (Penal Law § 125.10), four counts of assault in the second degree (Penal Law § 120.05 [4]), four counts of assault in the third degree (Penal Law § 120.00 [2], [3]), reckless

endangerment in the second degree (Penal Law § 120.20), reckless driving (Vehicle and Traffic Law § 1212) and driving while ability impaired (Vehicle and Traffic Law § 1192 [1]).

At trial, Andrew Adamczyk testified that several hours before the accident he held a party at his parents' house located in the Town of Mount Hope along Guymard Turnpike, a two-lane unlit highway with a speed limit of 55 miles per hour. There was a sharp bend in the road near the home. At one point that evening, he watched defendant's 2008 Mitsubishi Lancer speed by his house, turn around and enter his driveway. When defendant exited his car, he asked Adamczyk whether he liked the modifications he had made to the exhaust and air intake systems—adjustments designed to make the vehicle louder and faster. In response, Adamczyk admonished defendant not to drive by his house at such a dangerously high rate of speed.

At the party, 10 to 15 guests were drinking vodka and beer. Kyle Ligenzowski testified that he and defendant drank two shots of vodka together and played "beer pong" as teammates. Other partygoers likewise saw defendant drinking vodka and participating in beer pong. Two witnesses testified that defendant appeared to be intoxicated. After defendant had been at the party for a few hours, Ligenzowski told him that two people—Jorge Ortiz and Michael Nazario—needed a lift to the party from the nearby train station in Middletown. Defendant agreed to pick them up and he, Ligenzowski and Therasa Lazaro left the party a little after midnight. After picking up the two individuals, defendant stopped at a gas station to purchase more beer and headed back to the party. Ligenzowski, Ortiz and Nazario each drank beer and smoked marijuana while riding in the back seat. Lazaro was seated in the front passenger seat.

Suddenly, defendant brought his car to a halt in the middle of the road even though there was no reason to stop. He revved the engine, shifted into gear and accelerated quickly. Ligenzowski and Nazario knew that defendant was speeding because they could hear the car loudly accelerating and felt themselves being pushed back into the seat. Ortiz leaned forward to look at the speedometer and saw that the needle was pointing at 130 miles per hour. Ligenzowski testified that he screamed at defendant to slow down but defendant did not respond. Nazario heard Ligenzowski exclaim to defendant to "slow down, we're about to make the turn." Ligenzowski's ominous warning was the last thing anybody in the car could recall before the collision.

The physical evidence established that defendant's vehicle crossed the double yellow line as it approached the curve by Adamczyk's house and entered the opposite lane of traffic, where it collided head-on into a car driven by Brian Stevens. The impact killed Stevens instantly and seriously injured Lindsey Ernst, who had been in the passenger seat of the car. Meanwhile, Ligenzowski was ejected from defendant's car, which had careened off the road and rolled over. Ligenzowski, Lazaro, Ortiz and Nazario all sustained serious injuries. The guests at Adamczyk's party heard the crash, called 911 and came out to help the survivors. When Adamczyk reached defendant, he heard defendant say "I'm sorry, I only had a few." The crash victims were all taken to a hospital where a blood sample of defendant was drawn at 2:41 a.m.

A forensic toxicologist testified that she conducted tests on defendant's blood sample for the presence of alcohol and drugs. The test was negative for alcohol but confirmed the presence of delta-9 tetrahydrocannabinol—the active ingredient in marijuana. A confirmatory test of a separate blood sample by another lab, however, did not detect marijuana in the blood. The toxicologist explained that the negative test may have resulted from the breakdown that occurred between the time the sample was taken and the time the confirmatory test was conducted, about a month and a half later. Although the test did not detect alcohol in defendant's system, the toxicologist explained that the average person can metabolize one drink, or a blood alcohol content (BAC) of .02, in a given hour. As a result, a person could consume alcohol for a period of time, until 11:30 p.m., and register a BAC of .00 by 2:41 a.m.

A state police expert in the field of collision reconstruction examined the crash site, observing yaw marks crossing the double yellow line from the lane in which defendant's vehicle had been traveling into the lane where Stevens had been driving. He identified skid marks that ran from the point of impact toward the final resting position of defendant's car. There were no skid marks suggesting that either car had braked prior to the collision. Based on all the evidence at the scene, the expert concluded that defendant had crossed the double yellow line heading into the curve, causing the accident. In addition, he testified that the calculations he performed to estimate the speed of defendant's car at the point of impact led him to conclude that defendant was driving at a minimum of 94 miles per hour. On cross-examination, he admitted that the handwritten

notes he had used to make the speed computations were lost while he was on medical leave and he could not replicate the math. As a result of the lost *Rosario* material, the trial court gave the jury an adverse inference charge.

At the close of the People's case, defendant moved to dismiss the second-degree manslaughter and second-degree assault counts on the ground that the evidence failed to establish the requisite mental state of recklessness. The trial court denied the motion and the jury convicted defendant of second-degree manslaughter, four counts of second-degree assault, two counts of third-degree assault, second-degree reckless endangerment and reckless driving. The jury acquitted defendant of driving while ability impaired. Defendant was sentenced to an indeterminate term of 3 to 10 years on the manslaughter count to run concurrently with determinate terms of three years on the second-degree assault counts and one year on the remaining counts.

The Appellate Division affirmed (94 AD3d 773 [2d Dept 2012]), and a Judge of this Court granted defendant leave to appeal (19 NY3d 1101 [2012]).

Defendant argues that the evidence was legally insufficient to sustain the second-degree manslaughter and second-degree assault convictions. In particular, he asserts that he did not act with the requisite mens rea of recklessness. Rather, he maintains that, at most, he was criminally negligent and the counts therefore should be reduced to criminally negligent homicide and third-degree assault. The People counter that the proof was legally sufficient to prove defendant's guilt beyond a reasonable doubt.

It is well settled that a "verdict is legally sufficient when, viewing the facts in a light most favorable to the People, there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (*People v Danielson*, 9 NY3d 342, 349 [2007] [internal quotation marks and citations omitted]). A sufficiency inquiry obligates a court "to marshal competent facts most favorable to the People and determine whether, as a matter of law, a jury could logically conclude that the People sustained its burden of proof" (*id.*).

A person is guilty of manslaughter in the second degree under Penal Law § 125.15 (1) when he "recklessly causes the death of another person." Similarly, a person commits assault in the

second degree when he "recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.05 [4]). The Penal Law defines "recklessly" in relevant part as follows:

> "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation" (Penal Law § 15.05 [3]).

The mental states of recklessness and criminal negligence share many similarities. Both require that there be a "substantial and unjustifiable risk" that death or injury will occur; that the defendant engage in some blameworthy conduct contributing to that risk; and that the defendant's conduct amount to a "gross deviation" from how a reasonable person would act (*compare* Penal Law § 15.05 [3] [Recklessly] *with* Penal Law § 15.05 [4] [Criminal Negligence]). The only distinction between the two mental states is that recklessness requires that the defendant be "aware of" and "consciously disregard" the risk while criminal negligence is met when the defendant negligently fails to perceive the risk (*see People v Boutin*, 75 NY2d 692, 696 [1990] [explaining that "the necessary underlying conduct, exclusive of the mental element, is the same" (internal quotation marks, emphasis, brackets and citation omitted)]; *People v Montanez*, 41 NY2d 53, 56 [1976] ["The defendant's awareness of the risk determines the degree of culpability"]).

In the context of automobile accidents involving speeding, we have held that the culpable risk-creating conduct necessary to support a finding of recklessness or criminal negligence generally requires "some additional affirmative act" aside from "driving faster than the posted speed limit" (*People v Cabrera*, 10 NY3d 370, 377 [2008]). Here, there was ample proof that defendant did more than merely drive faster than the legal limit—indeed, there was eyewitness testimony that he was traveling at more than double the posted speed limit of 55 miles per hour. Moreover, before the collision, defendant stopped his vehicle in the middle of the unlit road and revved the engine. He then hit the gas pedal and accelerated to an extremely high rate of speed

before crossing the double line into oncoming traffic. Viewed in the light most favorable to the People, the evidence showed that defendant used a public road as his personal drag strip to showcase the capabilities of his modified sports car. Although the jury acquitted defendant of driving while ability impaired (by alcohol), there was evidence that he had been drinking and smoking marijuana that evening (*see People v Loughlin*, 76 NY2d 804, 807 [1990]). The evidence therefore demonstrated that defendant engaged in conduct exhibiting "the kind of seriously blameworthy carelessness whose seriousness would be apparent to anyone who shares the community's general sense of right and wrong" (*Cabrera*, 10 NY3d at 377 [internal quotation marks, brackets and citation omitted]).

Furthermore, the proof was sufficient to support the jury's conclusion that defendant acted recklessly—by consciously disregarding the risk he created—as opposed to negligently failing to perceive that risk. Defendant was familiar with the curve in the road near Adamczyk's house, having driven by there on a number of prior occasions, and he had been warned twice about speeding into that very section of the road. When defendant first arrived at the party, Adamczyk told defendant in no uncertain terms not to speed by his driveway again. Later, just before the collision, Ligenzowski pleaded with defendant to slow down because they were "about to make the turn." Taken together, "there was sufficient proof for the jury to find that defendant was aware of and consciously disregarded a substantial and unjustifiable risk that his actions would cause the death of another" (*People v Heinsohn*, 61 NY2d 855, 856 [1984]). Consequently, defendant's convictions for second-degree manslaughter and second-degree assault are supported by legally sufficient evidence.

■ Defendant further contends that he is entitled to a new trial due to evidentiary errors. He claims that the trial court erred by giving an adverse inference charge as opposed to striking that portion of the accident reconstruction expert's testimony addressing the speed of defendant's car based on the missing *Rosario* notes. Relatedly, he asserts that the expert's testimony regarding the car's minimum speed was unreliable and should have been stricken because the expert could not produce or replicate the calculations by which he made his speed computations. At trial, however, defendant took a different posture—he asked the trial court to strike all of the expert's testimony, which included a substantial amount of proof

unrelated to the missing handwritten mathematical notes. Defendant did not, as he does now, single out the testimony pertaining to speed. Under these circumstances, we cannot say that the trial court abused its discretion by denying defendant's request to strike the entirety of the expert's testimony (*see People v Martinez*, 71 NY2d 937, 940 [1988]).

We have considered defendant's remaining arguments and conclude that they are without merit.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges READ, SMITH, PIGOTT, RIVERA and ABDUS-SALAAM concur.

Order affirmed.