■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES D. CROSBY, Appellant. [56 NYS3d 376]—

Mulvey, J. Appeal from a judgment of the County Court of Tompkins County (Rowley, J.), rendered March 20, 2015, convicting defendant following a nonjury trial of the crimes of manslaughter in the second degree (two counts), assault in the second degree, assault in the third degree and reckless driving.

At about 5:00 p.m. on December 31, 2013, Samantha Aarnio was driving on State Route 34/96 in the Town of Newfield, Tompkins County when, without warning, an oncoming Chevrolet Monte Carlo operated by defendant came out of a curve, crossed the double solid yellow line, entered Aarnio's lane and crashed head on into her Jeep. The force of the impact caused the Jeep to overturn and come to rest in a field along the highway. The collision resulted in the deaths of Aarnio's 67-year-old mother-in-law and a 19-year-old passenger in defendant's vehicle, as well as in multiple injuries to Aarnio, her husband and defendant. A six-count indictment charged de-

fendant with manslaughter in the second degree (two counts), assault in the second degree, assault in the third degree, reckless endangerment in the second degree and reckless driving. Following a nonjury trial, County Court dismissed the charge of reckless endangerment in the second degree and convicted defendant of the remaining charges. County Court sentenced defendant to prison terms of 4 to 12 years for each conviction of manslaughter in the second degree, four years in prison with three years of postrelease supervision for the conviction of assault in the second degree, one year in jail for the conviction of assault in the third degree and six months in jail for the conviction of reckless driving, with the sentences to run concurrently. Restitution was also ordered. Defendant appeals.

Defendant contends that the trial evidence was legally insufficient and that the verdict was against the weight of the evidence, specifically with regard to the element of recklessness. Although we find that defendant failed to preserve his argument regarding legal sufficiency for appellate review, in reviewing defendant's argument that the verdict is against the weight of the evidence, which does not require preservation (*see People v Hebert*, 68 AD3d 1530, 1531 [2009], *lv denied* 14 NY3d 841 [2010]), "we necessarily evaluate whether the elements of the challenged crimes were proven beyond a reasonable doubt" (*People v Scippio*, 144 AD3d 1184, 1185 [2016], *lv denied* 28 NY3d 1150 [2017]). As to the weight of the evidence, where a different verdict on each of the counts would not be unreasonable, we "must, like the trier of fact below, 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495 [1987], quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]). "Although the appellate court must review the evidence in a neutral light, great deference is accorded to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor [a]nd, as relevant here, the appropriate standard for evaluating a weight of the evidence argument on appeal is the same regardless of whether the finder of fact was a judge or a jury" (*People v Race*, 78 AD3d 1217, 1219-1220 [2010] [internal quotation marks, brackets and citations omitted], *lv denied* 16 NY3d 835 [2011]).

Since the parties stipulated to proof of the death and physical injury elements of manslaughter in the second degree, assault in the second degree and assault in the third degree, and that defendant's vehicle constituted a dangerous instrument within the meaning of Penal Law § 120.05 (4) if driven reck-

lessly, the only issue to be addressed is, as identified by defendant, his culpable mental state. Specifically, defendant contends that, absent proof of dangerous speeding at the moment of impact, his driving cannot be considered to constitute recklessness under the Penal Law. Each of the manslaughter and assault charges required proof that defendant acted recklessly when causing either death or injury to these victims (Penal Law §§ 120.00 [2]; 120.05 [4]; 125.15 [1]). "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he [or she] is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation" (Penal Law § 15.05 [3]).

The People's proof included not only the circumstances at the moment of impact, but extensive eyewitness testimony recounting defendant's almost maniacal operation of his car for a several-mile stretch of this twisting, winding country road until he emerged from a curve, swerving completely into Aarnio's lane of travel. At a point four miles south of the collision, and only a few minutes prior thereto, defendant's vehicle was recognized by a friend, Ashton Sutfin, in another car. Sutfin observed the Monte Carlo heading north on Route 34/96, trailing a group of four vehicles. He saw it make successive passes of all four vehicles within only an eighth of a mile, first passing a truck on a curve and then slamming on the brakes after defendant reentered his lane to avoid a rear-end collision with the car in front of him. He also estimated the Monte Carlo's speed at 50 to 60 miles per hour going over a blind hill in a stretch that had a recommended speed limit of 40 miles per hour. Defendant's behavior was so alarming that Sutfin phoned the passenger in defendant's car to angrily ask him why "they" were driving in this manner.

James Maphis, who was driving a box truck in a northerly direction along this road, was passed by defendant in a no passing zone while defendant was going approximately 70 to 75 miles per hour. Maphis saw the Monte Carlo fishtail across the double solid yellow line as it returned to the northbound lane and saw it pass two more vehicles and return to its lane just moments before another vehicle approached from the opposite direction. Erick White testified that he saw the Monte Carlo approach in his rearview mirror, noticing that it had dramatically passed two cars behind him, and then pull in

very close to the rear end of his vehicle. The Monte Carlo passed White and another car ahead, in a no passing zone, while heading up a blind hill. Catherine Kraus was also driving in the northbound lane. Kraus testified that she saw the Monte Carlo pass in no passing zones and saw it pass her with an oncoming car approaching. She hit her brakes to allow the Monte Carlo to swerve back into the northbound lane, narrowly avoiding a collision with the oncoming car. Daniel Lawrence, whose driveway is located approximately 500 feet from the site of the crash, testified that he first heard the sound of "tires moving faster than normal." He looked out the window and saw the Monte Carlo traveling down the hill in front of his home, noting that it was moving faster than he had ever seen a vehicle travel there, "about twice" as fast as normal traffic. A few seconds later, he heard the sound of the collision.

The People also presented the testimony of State Police accident reconstructionist Travis Webster. He estimated the speed of the Jeep at 40 to 45 miles per hour and the speed of the Monte Carlo at 84 to 90 miles per hour at the moment of impact. Because Webster used a "throw equation"[1] to calculate the Jeep's speed, County Court rejected his opinion on that point. Defendant presented the testimony of accident reconstructionist William Fischer. He opined that the Monte Carlo was traveling between 51 and 59 miles per hour, and the Jeep was traveling at 26 miles per hour. In rebuttal, the People presented another State Police accident reconstructionist in support of Webster's "throw equation." As conflicting expert testimony was offered as to the range of speed of the vehicles, County Court found that the experts could not establish at what speeds the vehicles were traveling at the time of the collision. However, it accepted Webster's conclusion that this was a high speed collision.

We first reject defendant's contention that the eyewitnesses' testimony regarding his driving maneuvers along that four-mile route were remote and, therefore, irrelevant to his mental state at the moment of impact, and instead find that the testimony is probative of "risk-creating" behavior (*People v Cabrera*, 10 NY3d 370, 377 [2008]; *see People v Briskin*, 125 AD3d 1113, 1120 [2015], *lv denied* 25 NY3d 1069 [2015]). We also find that County Court had ample basis to conclude that,

---

**1.** A "throw equation" is a methodology employed to estimate vehicle speed based upon the ejection of an object due to vehicle impact.

absent proof of any other contributing factors,[2] the excessive speed of the Monte Carlo was the cause of defendant's inability to keep it from crossing over into the opposite lane.

In determining defendant's subjective perception or non-perception of the risk of harm, the trier of fact must examine the objective evidence of the surrounding circumstances (*see People v Licitra*, 47 NY2d 554, 559 [1979]; *see also People v Briskin*, 125 AD3d at 1119). To constitute recklessness, these circumstances must show that "the defendant engage[d] in some blameworthy conduct contributing to that risk; and that the defendant's conduct amount[s] to a gross deviation from how a reasonable person would act" (*People v Asaro*, 21 NY3d 677, 684 [2013] [internal quotation marks and citations omitted]). We find that excessive speed, combined with the loss of control after several incidents of dangerous passing and fishtailing in the moments prior to the collision, amply demonstrate "the kind of seriously blameworthy carelessness whose seriousness would be apparent to anyone who shares the community's general sense of right and wrong" (*People v Cabrera*, 10 NY3d at 377 [internal quotation marks, brackets and citations omitted]). In effect, defendant was using "a public road as his personal drag strip" (*People v Asaro*, 21 NY3d at 685), and, as such, this constitutes sufficient proof of criminal recklessness (*id.*).

Since the proof establishes that defendant created the risk by his affirmative actions, it likewise confirms that he consciously disregarded that risk. "[D]eferring to County Court's opportunity to view the witnesses, hear the testimony and observe demeanor," as we must (*People v Olsen*, 124 AD3d 1084, 1087 [2015] [internal quotation marks and citations omitted], *lv denied* 26 NY3d 933 [2015]), we conclude that the weight of the evidence supports the element of recklessness in each of the Penal Law convictions. We likewise find that this evidence constituted ample proof that defendant drove "in a manner which unreasonably interfere[d] with the free and proper use of the public highway, or unreasonably endanger[ed] users of the public highway" as required for his conviction of reckless driving pursuant to Vehicle and Traffic Law § 1212.

Finally, we discern no reason to disturb the sentence imposed by County Court. The concurrent prison sentences of 4 to 12 years for the convictions of manslaughter in the second degree, which are within the permissible statutory range and less than the maximum of 5 to 15 years (*see* Penal Law § 70.00 [2] [c]; [3]

---

**2.** It was undisputed that there was light snow falling, with no accumulation of snow on the highway.

[b]), reflect the magnitude of defendant's crimes. Having reviewed the record, we discern neither an abuse of discretion nor any extraordinary circumstances warranting a reduction of the sentence in the interest of justice (*see People v Burnett*, 93 AD3d 993, 994 [2012]; *People v Evans*, 81 AD3d 1040, 1041-1042 [2011], *lv denied* 16 NY3d 894 [2011]).

Peters, P.J., Garry, Devine and Aarons, JJ., concur. Ordered that the judgment is affirmed.