People v Cole (2019 NY Slip Op 08452)





People v Cole


2019 NY Slip Op 08452


Decided on November 21, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 21, 2019

110189

[*1]The People of the State of New York, Respondent,
v
John W. Cole, Appellant.

Calendar Date: October 15, 2019

Before: Lynch, J.P., Clark, Devine and Pritzker, JJ.


Bracewell LLP, New York City (Paul Shechtman of counsel), for appellant.
Karen A. Heggen, District Attorney, Ballston Spa (Gordon W. Eddy of counsel), for respondent.



Lynch, J.P.
Appeal from a judgment of the County Court of Saratoga County (Murphy III, J.), rendered May 11, 2018, upon a verdict convicting defendant of the crimes of assault in the second degree, driving while ability impaired and reckless driving.
In August 2017, defendant was charged in a four-count indictment with crimes related to a single car, late night accident on March 11, 2017, during which defendant crashed the vehicle he was driving and a rear-seat passenger was seriously injured. Following a jury trial, defendant was convicted of assault in the second degree based on a theory of recklessness, driving while ability impaired and reckless driving, but acquitted on a charge of vehicular assault in the second degree. He was sentenced to a prison term of seven years with three years of postrelease supervision on the assault conviction, to run concurrently with 15 and 30-day jail sentences on the lesser convictions. Defendant appeals.
Defendant maintains that the verdict convicting him of assault in the second degree was against the weight of the evidence. We disagree. Where, as here, an acquittal would not have been unreasonable given the differing witness accounts of the events leading up to the accident, our role is to view the evidence in a neutral light and weigh the conflicting testimony, assess the rational inferences to be drawn from that testimony and determine whether the jury was justified in finding that the elements of the crime were proven beyond a reasonable doubt (see People v Danielson, 9 NY3d 342, 348-349 [2007]; People v Brinkley, 174 AD3d 1159, 1160 [2019]). In making this assessment, "[g]reat deference is accorded to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (People v Bleakley, 69 NY2d 490, 495 [1987]; see People v Race, 78 AD3d 1217, 1219 [2010], lv denied 16 NY3d 835 [2011]). For a conviction of assault in the second degree, the People must prove that the defendant "recklessly cause[d] serious physical injury to another person by means of . . . a dangerous instrument" (Penal Law § 120.05 [4]). In the assault context, a person acts recklessly when "he [or she] is aware of and consciously disregards a substantial and unjustifiable risk" of harming another person (Penal Law § 15.05 [3]). "The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation" (Penal Law § 15.05 [3]). Serious physical injury is defined as "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]). Further, a vehicle is a dangerous instrument (see Penal Law § 10.00 [13]).
After an evening out with several couples during which the group had dinner and went to see a band at a bar, defendant and his wife left the bar around midnight to return home with Deanna Shapiro and Scott Shapiro. Defendant was driving, his wife was in the passenger seat and the Shapiros were riding in the back seat of the car. Scott Shapiro (hereinafter Shapiro) testified that he asked defendant if he was okay to drive, and defendant "indicated that he was fine to drive and that he had been drinking water for the previous hour." Shapiro testified that he saw defendant with alcoholic drinks during the evening and that he could "say with certainty that at no point did I see him without a drink." For his part, Shapiro testified that he had about five or six drinks, and thought his wife "had close to the same." According to Shapiro, after turning off Route 9 onto Sitterly Road in the Town of Halfmoon, Saratoga County, defendant "basically just floored the vehicle, just opened it up to see how fast [the car] could go," adding that it "[f]elt like [defendant] just accelerated as fast as he could accelerate." According to Shapiro, he and his wife both asked defendant to slow down and defendant responded with words "to the effect of [d]on't tell me what to do or [s]hut up woman" — a comment apparently directed at defendant's wife. Shapiro continued that "[i]t actually felt like [defendant] accelerated further after his response and it was almost immediately he had lost control of the vehicle." Deanna Shapiro sustained injuries during the accident that have left her paralyzed from the neck down. Shapiro acknowledged during his testimony that he and his wife retained civil counsel prior to the grand jury proceedings. Before he retained counsel, Shapiro had told the police that defendant "was driving pretty fast and began to swerve" without mentioning any warnings to slow down. Shapiro conceded that he may have text-messaged defendant the morning of the accident "not to beat himself up." For her part, Deanna Shapiro gave a similar account of the events on Sitterly Road, asking defendant to "please slow down you're going too fast." She acknowledged that she was not wearing a seat belt.
David Ennist, a State Trooper, responded to the accident scene. Ennist testified that he did not believe defendant's explanation that he lost control trying to avoid a construction sign in the road, and observed that defendant had "an odor of alcoholic beverages" and "bloodshot glassy eyes." After defendant failed four field sobriety tests, he refused to take a chemical blood alcohol content test. Defendant was placed under arrest and, upon being read his Miranda rights, he initially said that he had two to three beers, but later admitted that he had four or five beers over the course of the evening. In contrast, Shapiro testified that he purchased a vodka drink for defendant.
According to Ennist, the vehicle initially went off the south side of the road, "sheered off a fire hydrant" and then crossed back over both lanes over the north shoulder into a construction area where it "appeared to have hit [a] tree." State Trooper Michael Menges gave a similar description of the accident, adding that the vehicle came to rest in some construction debris. Menges also smelled alcohol on defendant's breath. Jeremy Shultis, a State Police investigator specializing in accident reconstruction, explained that there were no mechanical issues with the car, there were no markings to indicate that defendant braked during the accident and that defendant was going 58 to 78 miles per hour. The speed limit was 40 miles per hour and there were road signs warning of a "curve ahead" where the accident occurred. An independent consultant, Brian Chase, reiterated that the vehicle's mechanical systems were intact but that no braking occurred and that "the accelerator pedal [was] at 99 to 100 percent." On cross-examination, Chase agreed that the vehicle, a 2015 BMW 650i, was a "very sophisticated and high-performance vehicle" capable of cornering a curve "better than some other vehicles."
In defense, multiple witnesses who were present during the evening's events testified as to defendant's sobriety. Defendant's wife, Regina Cole, also testified that defendant was drinking nonalcoholic beverages. In describing the events on Sitterly Road, Cole testified that "it was very windy, [and] something had blown towards the car . . . windshield" on the passenger side. She thought "it may be a sign that was blowing, because there was a construction site and there were many signs all over and cones" — an explanation consistent with defendant's statement to Ennist. At that point, she screamed defendant's name in "panic" and he swerved the car "striking the fire hydrant, and the vehicle came to a stop" at the construction site near the tree. Cole testified that no one told defendant to slow down and that defendant did not tell her to shut up. Brad Silver, a motor vehicle accident reconstructionist, testified that the vehicle did not hit a tree and the passenger side damage was consistent with an object striking the vehicle before it first left the road. Silver also opined that the vehicle was capable of navigating the curve at the speed it was traveling. Deferring to the jury's credibility determinations, which would allow the jury to justifiably conclude that defendant's ability to drive was impaired by alcohol, that he disregarded warnings to slow down and that he lost control while driving at an excessive speed without braking, we conclude that the verdict as to the assault conviction was not against the weight of the evidence (see People v Crosby, 151 AD3d 1184, 1188 [2017]; People v Carrington, 30 AD3d 175, 176 [2006], lv denied 7 NY3d 846 [2006]; People v Grenier, 250 AD2d 874, 877 [1998], lv denied 92 NY2d 898 [1998]; People v Acton, 149 AD2d 839, 841 [1989]).
Defendant maintains that County Court abused its discretion in its Sandoval ruling because it allowed the People to cross-examine him for impeachment purposes about a 1991 burglary conviction and the ruling "kept him off the witness stand." A defendant who chooses to testify may be questioned about a prior conviction pertinent to the issue of credibility (see People v Sandoval, 34 NY2d 371, 376 [1974]). There is no dispute that trial courts have broad discretion "as to which prior convictions . . . can be inquired about and the extent of such inquiry" (People v Adams, 39 AD3d 1081, 1082 [2007], lv denied 9 NY3d 872 [2007]). Moreover, there is, as defendant concedes in his brief, no bright line or per se rule requiring preclusion of a prior conviction based on the age or remoteness of the conviction (see People v Gray, 84 NY2d 709, 712 [1995]). That said, remoteness is a factor to be considered in the balancing process required under Sandoval, where the Court of Appeals explained that "[l]apse of time . . . will affect the materiality if not the relevance of previous conduct. The commission of an act of impulsive violence, particularly if remote in time, will seldom have any logical bearing on the defendant's credibility, veracity or honesty at the time of trial" (People v Sandoval, 34 NY2d at 376-377). Also significant is whether allowing evidence of a prior conviction would compromise a defendant's right to a fair trial by deterring the defendant from taking the stand, leaving the jury without significant material evidence (id. at 376, 378).
Here, the People sought to impeach defendant with eight prior convictions during the period from 1987 to 1991, including a 1991 burglary conviction for which defendant was incarcerated until 1995 and released from parole in 1998. Defendant has had no convictions since that time up to the present event. In fashioning a compromise, County Court determined that the People could inquire of defendant whether he had been convicted of one felony level offense in 1991, without further detail. In explaining its ruling, the court noted that "defendant spent a substantial portion of the time [after the 1991 conviction] in a state prison facility."
In gauging whether a conviction is too remote, courts often consider the period of time during which the defendant was incarcerated, as County Court did here. For instance, in People v Wright (38 AD3d 1004 [2007], lv denied 9 NY3d 853 [2007]), this Court allowed inquiry about 20-year-old rape and robbery convictions where the defendant had been released from prison "only nine months prior to the present offense" (id. at 1005-1006; see also People v Wilson, 78 AD3d 1213, 1215-1216 [2010] [conviction more than 10 years earlier where the defendant was incarcerated for an extensive period of time], lv denied 16 NY3d 747 [2011]; People v Tarver, 292 AD2d 110, 116-117 [2002] [20-year-old conviction where the defendant was incarcerated for an extensive period after the conviction], lv denied 98 NY2d 702 [2002]; People v Teen, 200 AD2d 785, 786 [1994] [12-year-old conviction where the defendant was incarcerated for a portion of those years], lv denied 83 NY2d 859 [1994]; People v Ortiz, 156 AD2d 197, 198 [1989] [16-year-old conviction where the defendant spent eight years in prison], lvs denied 76 NY2d 739, 740 [1990]).
By comparison, here, defendant had been released from prison for 23 years, with an unblemished record leading up to this event. Under these circumstances, we conclude that County Court abused its discretion in allowing inquiry into the 1991 conviction, which was simply too remote (see People v Caviness, 38 NY2d 227, 233 [1975]; People v Contreras, 108 AD2d 627, 628 [1985]; People v McKay, 101 AD2d 960, 961 [1984]). That said, a Sandoval determination is subject to harmless error analysis (see People v Grant, 7 NY3d 421, 424 [2006]; People v McKay, 101 AD2d at 961). Under a nonconstitutional harmless error standard, the error is deemed harmless when the proof of guilt is overwhelming and there was no significant probability that the jury would have acquitted the defendant but for the error (id.). Notably, "[h]armless error analysis does not involve speculation as to whether a defendant would have testified if the legal error had not occurred" (People v Williams, 56 NY2d 236, 240 [1982]). As recited above, there was differing testimony between the Shapiros and defendant's wife as to what was said in the moments leading up to the accident. Given the explanation by defendant's wife that defendant had been drinking water for hours and "was definitely fine to drive," that no one cautioned defendant to slow down and that something struck the passenger side of the vehicle triggering the accident, we cannot say that the jury was deprived of significant material evidence as to the happening of the accident by defendant's decision not to testify (see People v Sandoval, 34 NY2d at 376, 378). Moreover, multiple witnesses testified as to defendant's asserted sobriety. As such, we find no significant probability that the jury would have acquitted defendant but for the error, and conclude that the court's Sandoval ruling constituted harmless error.
We are unpersuaded by defendant's contention that County Court improperly limited defense counsel's summation with respect to the Shapiros' intent to pursue a civil action against defendant. During cross-examination, Shapiro testified that he and his wife had retained counsel with respect to a potential civil lawsuit. An objection was made and, during a brief colloquy outside the jury's presence, the court explained that reference to a civil suit was acceptable but cautioned counsel not to "get into any insurance numbers, settlement . . . any other money issue." Despite that instruction, defense counsel next inquired whether the Shapiros "obtained an attorney in an attempt to recoup monetary damages," to which Shapiro replied, without objection, that "[w]e're facing significant life-long expenses as far as monetary damages." Defense counsel then clarified, consistent with the court's ruling, that "[m]y question to you is whether or not you have retained counsel," to which Shapiro responded affirmatively.
With this backdrop, defense counsel addressed the credibility of the Shapiros during summation, stating, "You know that lawyers have been involved for recovery purposes, recovery of money." County Court sustained the People's prompt objection, directing the jury to disregard the comment and instructing, "You may not consider recovery issues in your deliberations." Consistent with the court's instructions, that ruling did not preclude defense counsel from commenting on the fact that the Shapiros had retained counsel for purposes of a civil action, but only to steer clear of commenting on the potential monetary recovery. Moreover, defense counsel fully explored during the cross-examination of Shapiro and summation the differences between Shapiro's statements made shortly after the accident and the statements and testimony made after the Shapiros contacted civil counsel (see People v Savastano, 280 AD2d 498, 498 [2001], lv denied 96 NY2d 867 [2001]; compare People v Stein, 10 AD3d 406, 406-407 [2004], lv denied 4 NY3d 768 [2005]; People v Schneider, 47 AD2d 864, 864 [1975]).
Finally, defendant's contention that the sentence is harsh and excessive is unavailing. Although County Court imposed the maximum sentence for assault in the second degree (see Penal Law § 70.00 [2] [d]), we discern neither an abuse of discretion nor extraordinary circumstances warranting a reduction in the interest of justice (see People v Zi He Wu, 161 AD3d 1396, 1398 [2018], lv denied 32 NY3d 943 [2018]).
Clark, Devine and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed, and matter remitted to the County Court of Saratoga County for further proceedings pursuant to CPL 460.50 (5).