People v Hill (2025 NY Slip Op 25109)

[*1]

People v Hill

2025 NY Slip Op 25109

Decided on May 6, 2025

Supreme Court, Queens County

Hartofilis, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on May 6, 2025
Supreme Court, Queens County

People of the State of New York,

against
Mario Hill, Defendant.

Ind. No. 74661/2023

ADA Vivian Gonzalez, Office of the Queens County District Attorney Melinda Katz, for the People. 
George Vomvolakis, Esq. for the Defendant.

Michael J. Hartofilis, J.

Defendant has moved for omnibus relief requesting this court to order i) inspection of the grand jury minutes, ii) dismissal or reduction of the felony counts in the indictment on the ground of legally insufficient evidence or improper procedures pursuant to CPL §§ 70.10, 190.65, and 210.20; iii) suppression of Defendant's statements to law enforcement or alternatively, a Huntley hearing; iv) suppression of physical evidence seized or alternatively, a Mapp hearing; v) preclusion of evidence on cross-examination of Defendant regarding any prior bad acts or crimes, should he testify; vi) for additional discovery beyond CPL article 245; vii) that the search warrant is invalid; and vii) grant of reservation of rights to file additional motions.
Defendant was indicted on charges of manslaughter in the second degree (PL § 125.15[1][), criminally negligent homicide (PL § 125.10), reckless driving (VTL § 1212), and aggravated unlicensed operation of a motor vehicle in the third degree (VTL § 511 [1][a]). It is alleged that at about 8:15 PM on December 18, 2023, Defendant was driving a Dodge Ram pickup truck northbound on Guy Brewer Boulevard in Queens. He drove up and stopped at a red light behind two cars waiting at the intersection of South Conduit Avenue. Instead of waiting for the green light, Defendant depressed his accelerator to 100% and veered left to cross the double yellow line. In the opposing traffic lane, he sped past the steady red traffic signal into the intersection to jump ahead of the two cars in front of him. At the moment, Fritz Slowe, driving eastbound on South Conduit Avenue, approached and entered the same intersection as his green light was changing. Fritz Slowe was killed when his vehicle collided with the driver's side of Defendant's vehicle. Investigation revealed that Defendant's license was suspended for numerous failures to appear in traffic courts in Nassau County. 
 Motion to Dismiss the Indictment
The court has reviewed the grand jury minutes in camera. The court is unpersuaded by Defendant's argument that the felony charges are legally insufficient.
On a motion to dismiss for legal insufficiency, Defendant has the burden to make a clear showing of legal insufficiency. (see, People v Heber, 192 Misc 2d 412 [Sup Ct Kings County [*2]1994][internal citations omitted]). Only a prima facie showing, not proof beyond a reasonable doubt, is needed to establish legal sufficiency of the evidence before the grand jury. (CPL § 210.20 [1][b]; People v Brownlee, 121 AD2d 553 [2d Dep't 1986], citing People v Brewster, 63 NY2d 419, 422 [1986]). Determining the adequacy of proof to show reasonable cause to indict is exclusively the province of the Grand Jury, whose action is presumed to be valid. (People v Swamp, 84 NY2d 725, 730 [1995]; People v Pelchat, 62 NY2d 97 [1984]; CPL § 190.65[1][b]). "It is the Grand Jury which is the arbiter of the credibility and the weight to be given to evidence that a trial jury might not convict on this evidence is not our concern." (People v Haney, 30 NY2d 328 [1972]). 
Thus, judicial scrutiny on a motion to dismiss a count of the indictment on sufficiency grounds is limited to viewing the evidence most favorably to the People and evaluating whether the evidence and the inferences that logically flow therefrom, if unexplained and uncontradicted, supply proof of every element of the charged crimes and would justify conviction by a petit jury. (People v Gaworecki, 37 NY3d 225 [2021], quoting People v Grant, 17 NY3d 613, 616 [2011]; People v Mills, 1 NY3d 269, 274-275 [2003]). If these requirements are met, proof of a defendant's guilt beyond a reasonable doubt of all elements of the charged crimes is a question deferred to the jury at a trial of the matter. (People v Jennings, 69 NY2d 103, 115 [1986]; see, e.g., People v Sylvester, 254 AD2d 711 [4th Dep't 1998]; People v Rojas, 61 NY2d 726, 727 [1984]). In light of these standards, the cases cited by Defendant, which address the sufficiency of evidence upon conviction after a jury trial, are inapposite to this court's determination at this stage.
To indict defendant on the instant charge of manslaughter in the second degree, the People were required to present competent evidence establishing that he recklessly caused the death of Fritz Slowe in that Defendant was aware of and consciously disregarded a substantial and unjustifiable risk that death will result from his action. (PL §§ 15.05[3], 125.15[1]). Indictment on the offense of criminally negligent homicide required legally sufficient evidence demonstrating that Defendant caused the death of Fritz Slowe because he failed to perceive a substantial and unjustifiable risk that death would result from his action. (PL §§ 15.05[4], 125.10).
The underlying essential conduct element for legal sufficiency of both reckless manslaughter and criminally negligent homicide is common to both charges; it must involve "some degree of risk creation by the defendant," to wit, a "substantial and unjustifiable risk" that death or injury will occur from defendant's action (People v Asaro, 21 NY3d 677, 684 [2013]; People v Boutin, 75 NY2d 692, 696 [1990]), and that the manner of death was a foreseeable result of the risk-creating conduct. (People v Kibbe, 35 NY2d 407 [1974]). The evidence must demonstrate that the defendant engaged in some blameworthy conduct creating or contributing to the risk of death which amounts to a "gross deviation" from how a reasonable person would act. (Id.; Asaro, 21 NY3d at 684;l PL § 15.05). The only distinction between the two mental states is that recklessness requires that the defendant be "aware of" and "consciously disregard" the risk, while criminal negligence is met when the defendant negligently fails to perceive the risk. (Id., cited in Gaworecki, 37 NY3d, at 231).
Defendant argues that the grand jury evidence failed to demonstrate the essential elements of recklessness or criminal negligence, as there is no additional affirmative fact rising to that level beyond his driving faster than the posted speed limit. He compares his conduct to that of defendants in People v Taylor and People v Lavelle, both cases which dismissed [*3]manslaughter and criminally negligent homicide convictions for insufficient evidence after trial.
Defendant misconstrues People v Taylor as ruling that driving infractions are insufficient to prove reckless or criminally negligent behavior. The appellate court reversed the conviction of criminally negligent homicide, but it did so on the basis of the totality of the "vague, indefinite and inconsistent" proof adduced by the People at trial, holding that the evidence "as to the acts and conduct of the defendant cumulatively are not sufficient to implement the failure to stop at a traffic light so as to sustain the conviction." (People v Taylor, 31 AD2d 852, 853 [3d Dep't 1969]).[FN1]
More recently, the Second Department has stated, "We do not mean that in order to sustain a conviction for criminally negligent homicide in a case in which the principal item of evidence consists of proof of the defendant's use of excessive speed, the prosecution must always prove some other traffic law violation unrelated to the defendant's rate of speed." (People v Senisi, 196 AD2d 376, 379 [2d Dep't 1994]).
Defendant's reliance on People v Lavelle as a "factually similar case" is also misplaced. (221 AD3d 1594 [4th Dep't 2023]). Lavelle briefly drove his vehicle on the right road shoulder to pass a vehicle traveling in the same direction and also making a left turn, and then as he turned sharply left, he crossed the double yellow line and struck a motorcycle. He was not speeding, and he did not pass a red light. The court held that this was insufficient evidence to support conviction for second-degree manslaughter, that driving on the shoulder, and crossing the double yellow line as he turned sharply left was not seriously blameworthy conduct.
As in Lavelle, the court must consider "the totality of Defendant's conduct" to determine his state of mind. (see, People v Williams, 150 AD3d 1273 2d Dep't 2017], cited in Chambers v Martuscello, 2024 WL 3904772, at *8—9 [EDNY 2024], app dism 2025 WL 763675 (2d Cir 2025]). In contrast to the apparent acts of the driver in Lavelle, Defendant here is not charged with mistaken or inadvertent actions, or poor driving judgment given the roadway environment. (People v Cardona, 207 AD3d 737 [2d Dep't 2022][internal citations omitted]). Instead, from a lawfully stopped position behind two other cars at a red light, he made the affirmative choice to cross over the double yellow line into the opposing traffic lane, then "floor" the accelerator to 100% of his vehicle's capability, and enter a busy, urban, commercial intersection against the steady red traffic signal without regard to what traffic may have been approaching. Moreover, he made this "jack-rabbit start" at almost twice the posted speed limit of 25 miles per hour to jump in front of two other cars waiting patiently at the light. 
Additionally, far from being irrelevant, the court finds that the evidence of Defendant's license suspensions sheds light on his state of mind. It needs hardly be said that driver licensing regulations and rules of the road all exist to ensure safety for people and property who must share roads with inherently dangerous weapons such as vehicles. The grand jury could have determined that Defendant's driving with a suspended license was a conscious disregard of the law to avoid creating undesirable risks to others on the road. (see, e.g., People v Haney, 30 NY2d 328, 334 [1972]). While each separate vehicle regulation and rule of the road allegedly flouted by Defendant during and prior to this incident, existing alone, might not rise to the level of seriously blameworthy conduct which is a "gross deviation" from how a reasonable driver [*4]would act, (Gaworecki, at 231), each also undoubtedly provides "some degree of risk creation" attributable solely to Defendant. (Boutin, 75 NY2d, at 696; see also, People v Reyes, 148 AD2d 756, 758-9 [2d Dep't 1989, affd 75 NY2d 590, and People v Deitsch, 97 AD2d 327, 335 [2d Dep't 1983]). However, the cumulative aggregation of his acts supports a logical inference of "seriously condemnatory behavior" by Defendant which created a foreseeable, substantial, unjustifiable risk of death. (People v Pino, 162 AD3d 910 [2d Dept 2018]); People v Reyes, 148 AD2d 756 [2d Dep't 1989][defendant created multiple unsafe conditions leading to foreseeable risk of fire and injury); compare People v Acevedo, 187 AD3d 1030, 1032-33[2d Dep't 2020]).
Defendant's argument about the conduct of Fritz Slowe in this tragic crash must not go unaddressed. Defendant cannot escape liability simply because the hazard he created may not have been the sole cause of the accident. (People v Cicchetti, 44 NY2d 803, 804 [1978]; People v Ballenger, 106 AD3d 1375, 1377 [3d Dep't 2013)], citing People v DaCosta, 6 NY3d 181,184 [2006]). First, Slowe's driving and vehicle record are "of minimal, if any, relevance to the issue of whether it was foreseeable to the defendant" that a driver would be entering the intersection from the west side. (People v Ryan, 161 AD3d 893, 896d Dep't 2018][cross-examination of witness about driving record properly precluded as irrelevant and having potential to mislead or confuse the jury]).
Second, no criminal statute addresses the effect of an intervening cause as it relates to the criminal responsibility of one who sets in motion the machinery which ultimately results in the death of another. (People v Kibbe, 35 NY2d 407, 411—13 [1974]). To be a sufficiently direct cause of death to warrant criminal liability, it is not necessary that the defendant intend the ultimate harm which results, as long as the ultimate harm of the defendant's acts was foreseeable and is proven beyond a reasonable doubt. (Id.). "A person who is aware of and consciously disregards a substantial risk must also foresee the ultimate harm that the risk entails." (Henderson v Kibbe, 431 US 145, 146 [1977], affirming People v Kibbe, 35 NY2d 407). An intervening event only absolves defendant of criminal liability if it is the sole cause of the death. (People v Stewart, 40 NY2d 692, 697). In other words, the defendant's conduct must contribute to the victim's death by setting in motion "the events that result in the killing." (People v Ryan, 161 AD3d 893, 895—96 [2d Dep't 2018], citing DaCosta, 6 NY3d 181). 
Thus, although Defendant's conduct here may not have been the sole cause of the accident, the crash was not "an extraordinary coincidence," nor was its connection to Defendant's actions "hypothetical and speculative." (People v Heber, 192 Misc 2d 412, 421 [Sup Ct Kings County 2002][internal citations omitted]). Instead, Defendant affirmatively set in motion a foreseeable crash which ultimately resulted in Fritz Slowe's death, and therefore were a sufficiently direct cause thereof to warrant the imposition of criminal sanctions. (Kibbe, at 413, cited in People v Vazquez, 211 AD3d 1592, 1594 [4th Dep't 2022]). 
The court also finds the prosecutor conducted the proceedings properly. The grand jury minutes reveal that the same quorum of the grand jurors was present and heard all the evidence prior to the prosecutor delivering the legal instructions; the witnesses testified under oath; and no unauthorized person within the meaning of CPL § 190.25 was present at any time during the proceeding. (People v Sayavong, 83 NY2d 702 [1996]). The minutes reflect that the prosecutor's instructions on the relevant legal principles for all counts were adequate and proper. (People v Calbud, Inc., 49 NY2d 389 [1980]). There were no omissions, irregularities, or defects in the proceeding which impaired its integrity and prejudiced defendant, as would be required to invoke the "exceptional" remedy of dismissal of the indictment. (People v Addimondo, 197 [*5]AD3d 106, 121 [2d Dep't 2021], citing People v Huston, 88 NY2d 400, 409 [1996]; People v Adessa, 89 NY2d 677 [1997]; People v Burch, 108 AD3d 679, 680 [2d Dep't 2013]).
The totality of Defendant's actions as presented to the grand jury permitted logical inferences that his behavior evinced a gross deviation from the expected behavior of a reasonable driver in his situation, and that his conduct was a foreseeable and actual contributory cause of Fritz Slowe's death. (People v Stan XuHui Li, 34 NY3d 357, 370; People v Roth, 80 NY2d 239, 243-44 [1992]). The evidence presented was both competent and legally sufficient to provide reasonable cause to believe he committed every element of the charges in the indictment, and the charge to the jury was proper. (see CPL §§ 190.65 [1]; 210.20 [1]; 210.30 [1]; 70.10 [1]; see also People v Jensen, 86 NY2d 248 [1995]; Calbud, 49 NY2d 389). 

Motion to Suppress Statements
Defendant's motion to suppress his statements to law enforcement is granted only to the extent that a Huntley/Dunaway hearing is ordered before trial. 

Motion to Suppress Physical Evidence and Controvert the Search Warrant
Defendant's motion to suppress physical evidence is summarily denied as there is no evidence that any physical items were seized from Defendant's person. 
Defendant has also moved to controvert the search warrant, and has the initial burden of establishing, by a preponderance of the evidence, that a deficiency in the warrant exists. (Franks v Delaware, 438 US 154, [1978]). A search warrant, issued after examination of its application by a magistrate, shall be entitled to a presumption of validity. (People v Castillo, 80 NY2d 578, 585 [1992]; People v Traymore, 241 AD2d 226 [1st Dep't 1998], lv denied, 92 NY2d 907); People v Ortiz, 234 AD2d 74, 75-76 [1st Dep't 1996]). The quantum of proof necessary to support the issuance of a warrant must provide a substantial basis upon which the issuing magistrate reasonably could have concluded, in the clear light of everyday experience, that evidence of the stated crimes will be found in the targeted item or location to be searched. (People v Marinelli, 100 AD2d 597, 599—600 [2d Dep't 1984][internal quotations and citations omitted]).
The court's common-sense review of the validity of the search warrant is limited to whether the issuing court reasonably determined that probable cause existed for its issuance. (Castillo, 80 NY2d, at 585). The sworn affidavit in support of the warrant was signed by the lead detective on the case, a 17-year veteran of the NYPD assigned to the Collision Investigation Squad. The warrant is sufficiently narrow and particular in its scope, requesting the seizure and search only of the Defendant's vehicle involved in the crash and the interior items which are relevant to the details of Defendant's driving and his identity as the driver. The affiant's basis of knowledge for the information in the affidavit was derived from his own observations, experience, and investigation as well as investigation by other police officers; the court finds him to be reliable, finds the information in the affidavit to be credible and accurate and not perjurious on its face. (People v Ketcham, 93 NY2d 416, 420—21 [1999]). Thus, the warrant application satisfies the Aguilar-Spinelli "two-pronged test" of reliability and credibility, (Aguilar v Texas, 378 US 108 [1964]; Spinelli v United States, 393 US 410 [1969]; People v Griminger, 71 NY2d 635 [1983]), and properly established probable cause to issue the warrant to seize and search Defendant's vehicle and evidence found therein. (People v Franklin, 137 AD3d 550, 552—53 [1st Dep't 2016], lv denied 27 NY3d 1132). 
Defendant has failed to meet his required burden of a substantial preliminary showing that probable cause for issuance of the warrant was based on knowingly, intentionally, or recklessly false statements essential to such finding. (Franks v Delaware, 438 US 154; People v Alfinito, 16 NY2d 181, 186 [1965]; People v Tambe, 71 NY2d 492, 504 [1988]; People v Williams, 208 AD3d 126 [2d Dep't 2022]; People v Tordella, 37 AD3d 500 [2d Dep't 2007]). Therefore, Defendant's motion to controvert the search warrant is denied, and no hearing is necessary.

Additional Motions
Defendant requests that the People provide all manner of potential Brady material, but he does not request such an order from the court. In any event, the court would decline to issue additional discovery orders in the absence of a showing that the provided discovery is deficient in some manner, except to remind the People of their statutory and constitutional discovery obligations.
A Sandoval hearing is ordered to be held immediately prior to trial.

Conclusion
Defendant's motion to inspect the grand jury minutes is granted. Defendant's motion to dismiss or reduce any counts of the indictment is denied. Defendant's motions to suppress physical evidence or alternatively, for a Mapp hearing, and to controvert the search warrant are denied. Huntley/Dunaway and Sandoval hearings are ordered to be held before trial. The People are reminded of their statutory and constitutional discovery obligations. The motion for the reservation of rights to file additional motions is denied subject to CPL § 255.20 [3] for leave to file upon good cause shown.
This constitutes the decision and ORDER of the Court.
Michael J. Hartofilis, AJSC
Dated: May 6, 2025
Kew Gardens, New York

Footnotes

Footnote 1:In any event, the holding in Taylor is based on the standard set forth in People v Eckert, 2 NY2d 126 [1956] which has been abrogated by People of Jennings, 69 NY2d 103, which restated the proof required for a conviction of this crime.